[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 390.]

THE STATE OF OHIO, APPELLEE, *v*. MCGUIRE, APPELLANT.

[Cite as *State v. McGuire*, 1997-Ohio-335.]

*Criminal law—Aggravated murder—Death penalty upheld, when—Residual doubt is not an acceptable mitigating factor under R.C. 2929.04(B).*

Residual doubt is not an acceptable mitigating factor under R.C. 2929.04(B), since it is irrelevant to the issue of whether the defendant should be sentenced to death.

(No. 96-1213—Submitted June 10, 1997—Decided December 10, 1997.)

APPEAL from the Court of Appeals for Preble County, No. CA95-01-001.

_____

{¶ 1} Dennis McGuire, appellant, was convicted of the kidnapping, rape, and aggravated murder of twenty-two-year-old Joy Stewart of West Alexandria, Ohio. He was sentenced to death.

{¶ 2} Joy Stewart was last seen alive on February 11, 1989. That morning, she had breakfast with her neighbors between 9 and 10. She went there alone that morning because her husband, Kenny Stewart, a truck driver, worked that day from approximately 7:00 a.m. to 5:00 p.m. After breakfast, Joy went to visit Juanita Deaton, the mother of her friend Chris Deaton. Mrs. Deaton and her son lived next to each other in a duplex in West Alexandria.

{¶ 3} McGuire had been hired by Chris Deaton to clean the ice out of his gutters that day. According to Chris, McGuire started around 9 or 10 a.m., and finished around noon. Mrs. Deaton testified that Joy arrived at around 9:30 or 10:00, while McGuire was working.

{¶ 4} Mrs. Deaton saw Joy talking to two unidentified males in a dark-colored car before she left. As Joy was leaving, she told Mrs. Deaton that "she was going to catch a ride somewhere," although Mrs. Deaton did not actually see Joy

leave in the car. Mrs. Deaton was unsure whether McGuire was one of the men in the car. A few minutes later, however, Mrs. Deaton asked whether McGuire had finished working on the gutters, and her son stated that McGuire had been paid and left.

{¶ 5} Jerry Richardson, McGuire's brother-in-law, testified that McGuire later came over to his house that afternoon. While they were in Richardson's garage, Joy came in and said she wanted some marijuana. Richardson further testified that McGuire offered to get her some, and the two left in McGuire's car.

{¶ 6} The following day, February 12, two hikers found the body of Joy Stewart in some woods near Bantas Creek. The front of her shirt was saturated with blood. One deputy sheriff at the scene, Larry Swihart, also noted that there appeared to be a "blood wipe mark" on her right arm. The body was taken to the Montgomery County Coroner's Office, where an autopsy was performed. The autopsy revealed that Joy had been stabbed twice. One wound, located above the left collarbone, caused no significant injury. The critical wound was a four-and-a-half-inch-deep cut in the throat, which completely severed the carotid artery and jugular vein. The doctor determined that Joy was alive when she received the wound, and that such a wound could have been caused by a single-edged blade shorter than four and a half inches, due to "how soft and moveable the tissues are in the neck." The autopsy also revealed abrasions around the neck, impressed with the cloth pattern of Joy's shirt.

{¶ 7} The coroner's office also took vaginal, oral, and anal swabs. The coroner found an abundant amount of sperm on the anal swab, some sperm on the vaginal swab, and none on the oral swab. The coroner indicated that sperm could be detected in the vagina for days or sometimes weeks after ejaculation; however, sperm in the rectum could be detected for a lesser time "because the environment is fairly hostile for sperm, and * * * a bowel movement * * * usually will purge the rectum of any sperm."

2

{¶ 8} Investigator David Lindloff of the Preble County Prosecutor's Office investigated the murder, but to no immediate avail. However, in December 1989, Lindloff was notified that McGuire wanted to talk to him about information concerning a murder in Preble County. McGuire was in jail at the time on an unrelated offense and told a corrections officer that he needed to talk to Investigator Lindloff and Deputy Swihart.

{¶ 9} Joseph Goodwin, the corrections officer McGuire initially talked to, took appellant to a private room to talk, where McGuire told him that he knew who had killed Joy Stewart. McGuire stated that Jerry Richardson, McGuire's brother-in-law, had killed Joy with a knife, and appellant could lead investigators to it. McGuire explained to Officer Goodwin that Richardson had wanted to have sex with Joy, but she had refused. McGuire claimed that Richardson then pulled a knife on her, and forced her to have oral sex with him. McGuire then said Richardson anally sodomized her because he "couldn't have regular sex with her because she was pregnant." He also said Richardson stabbed her "in the shoulder bone" and "cut her throat."

{¶ 10} Based on these details, Goodwin contacted Investigator Lindloff, who talked to McGuire on December 22, 1989. McGuire told Lindloff that Richardson committed the murder, that he stabbed Joy twice in the neck, and that "the first time it didn't go in. He pulled the knife back out and stuck her again." Lindloff was interested, since the fact that Joy had been stabbed twice in the neck and anally sodomized had not been revealed to the public at that time. The appellant also described in detail the area where Joy's body had been found.

{¶ 11} McGuire then led Lindloff and deputies to the murder weapon, on a local farm where he and Richardson had occasionally worked. McGuire led the officers to the hayloft and showed them where a knife was hidden behind a beam.

{¶ 12} A subsequent audiotaped interview by Deputy Swihart elicited further details from McGuire. McGuire claimed that Richardson choked Joy before

stabbing her and wiped his bloody hands off on her, both of which actions were consistent with the state of Joy's body at the crime scene. Again, Swihart felt that these details were significant, since they had never become a matter of public knowledge. Furthermore, McGuire stated that he was pretty sure that Richardson was driving his mother's blue Ford Escort the day of the murder. However, Richardson's mother later testified at trial that she had traded that car in 1988, a year before the murder, and Richardson did not have access to her car on the day of the murder, since she had driven it to work.

{¶ 13} While in prison on December 24, 1989, McGuire received a visit from his childhood friend Shawn Baird. At the time, McGuire told Baird that he knew about a murder that happened in Preble County in February. When Baird asked who did it, the appellant stated that he and Jerry Richardson had done it, and he was going to blame it all on Jerry.

{¶ 14} A fellow inmate at the Preble County Jail, Jack Stapleton, testified that he had overheard a conversation between McGuire and another inmate, in which McGuire claimed that he had seen his brother-in-law rape and murder Joy. However, at one point, McGuire apparently slipped and implicated himself when telling the story. While describing the murder, Stapleton testified that McGuire "had his hand like this describing [*sic*], telling the guy how she was killed. And he said I—he goes I mean he. Stabbed her like this. Hit a bone. It didn't kill her. So he stabbed her again."

{¶ 15} McGuire was later transferred to Madison Correctional Institute. An inmate there, Willie Reeves, testified that McGuire told him that while he was cleaning gutters, Joy showed up asking whether McGuire had any marijuana. McGuire offered to share some with her, and they left in his car. At one point McGuire asked whether she wanted to have sex, and she refused. McGuire then told Reeves he did it anyway. He then explained that because she was so pregnant, it was difficult to engage in sex with her, so instead he anally sodomized her. Joy

then became "hysterical," which made McGuire nervous. He ended up killing Joy for fear that he would go to jail for raping a pregnant woman.

{¶ 16} In June 1992, the Montgomery County Coroner's Office sent the vaginal, anal, and oral swabs collected from Joy's body, along with a cutting from her underpants, to Forensic Science Associates, a private laboratory, for DNA testing using the PCR technique.[1] A forensic scientist there compared DNA extracted from the samples with blood samples taken from Dennis McGuire, Jerry Richardson, Joy Stewart, and Joy's husband, Kenny Stewart. The scientist determined that McGuire could not be eliminated as a source of the sperm. Kenny Stewart and Richardson, however, could be eliminated, unless there were two sperm sources, *e.g.,* multiple assailants. This was because the sperm analyzed contained a DQ Alpha type 3, 4, with a trace amount of DQ Alpha type 1.1, 2. McGuire's DNA was the DQ Alpha type 3, 4, whereas Richardson, Stewart, and the victim's DNA was the DQ Alpha type 1.1, 2. The forensic scientist testified that the trace amount of 1.1, 2 could have resulted either from Joy's epithelial cells taken in the swab, or from a secondary sperm source. The sperm DNA analyzed had characteristics that appear in about one in one hundred nineteen males in the white population.

{¶ 17} On December 22, 1993, McGuire was indicted on one count of aggravated murder under R.C. 2903.01(B), with one felony-murder specification for rape under R.C. 2929.04(A)(7). McGuire was also indicted on two counts of rape (vaginal and anal) and one count of kidnapping.

{¶ 18} On December 8, 1994, the jury returned a guilty verdict on the aggravated murder and specification charge. McGuire was also convicted of anal rape and kidnapping. After a sentencing hearing, the jury recommended a sentence

---

1. The FBI crime laboratory had tried to perform testing in 1989. However, the FBI at the time used the RFLP technique, which requires a greater amount of genetic material. The FBI was unable to extract sufficient DNA from the sperm cells for RFLP testing.

of death for the aggravated murder. The trial judge sentenced the appellant to death, and the court of appeals affirmed.

{¶ 19} The cause is now before this court upon an appeal as of right.

───────────────

*Rebecca J. Ferguson*, Preble County Prosecuting Attorney, *K. Brent Copeland*, Assistant Prosecuting Attorney, and *Michael L. Collyer*, Special Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker*, Ohio Public Defender, *Joseph E. Wilhelm* and *Tracey A. Leonard*, Assistant Public Defenders, for appellant.

───────────────

**FRANCIS E. SWEENEY, SR., J.**

{¶ 20} Appellant has raised eighteen propositions of law for our consideration, which we have fully reviewed according to R.C. 2929.05(A). (See Appendix.) However, pursuant to *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, and subsequent cases, we summarily reject, without discussing, the merits of a number of appellant's propositions of law, as they involve settled issues. (Propositions of Law Three, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen.) Propositions of Law Two and Seven are waived. We have also independently assessed the evidence relating to the death sentence, balanced the aggravating circumstances against the mitigating factors, and reviewed the proportionality of the sentence to the sentences imposed in similar cases. As a result, we affirm the judgment of the court of appeals and uphold the sentence of death.

PENALTY PHASE ERRORS

{¶ 21} In his fifth proposition of law, appellant raises a myriad of alleged errors on the part of the prosecution, the trial court, and the court of appeals. Only those issues that are properly preserved and which merit discussion will be addressed.

**{¶ 22}** McGuire argues that a number of statements made by the prosecution during the penalty phase prejudiced his right to due process. Specifically he points to the prosecutor's and trial court's comments that McGuire's failure to admit the crime demonstrated the appellant's inability to be rehabilitated. Appellant relies on *State v. Tyler* (1990), 50 Ohio St.3d 24, 41, 553 N.E.2d 576, 596, for the proposition that a comment by the state on the defendant's lack of remorse at sentencing is improper.

**{¶ 23}** *Tyler*, however, does not hold that the state cannot comment on the lack of remorse whenever the defendant denies guilt. Rather, it holds that the state cannot refute potential mitigating factors that the defense has not first placed in issue. *Id*., citing *State v. DePew* (1988), 38 Ohio St.3d 275, 289, 528 N.E.2d 542, 557-558. In this case, McGuire specifically asserted his potential for rehabilitation as a mitigating factor, and the state was entitled to rebut that factor by arguing that McGuire's denial of guilt was inconsistent with a potential for rehabilitation.

**{¶ 24}** McGuire also asserts that the court of appeals erred because it failed to consider the testimony of Mary Beedy, who testified concerning McGuire's disciplinary record in prison. Her testimony was not mentioned in the court of appeals' opinion. However, McGuire "erroneously assumes that evidence that is not specifically mentioned in an opinion was not considered." *State v. Phillips* (1995), 74 Ohio St.3d 72, 102, 656 N.E.2d 643, 669-670. A court of appeals is not required to explain its reasons in finding that the aggravating circumstances outweigh the mitigating factors. R.C. 2929.05(A). Moreover, our independent review cures any error. *State v. Hill* (1996), 75 Ohio St.3d 195, 211, 661 N.E.2d 1068, 1083. Appellant's fifth proposition of law is overruled.

## EVIDENTIARY ISSUES

**{¶ 25}** McGuire alleges in Proposition of Law Six that the state introduced gruesome and cumulative photographs of the victim's body that were irrelevant and prejudicial to appellant. In *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15

OBR 379, 402, 473 N.E.2d 768, 792, we held that photographs of the body or crime scene were admissible if relevant and the danger of material prejudice to a defendant was outweighed by their probative value. Furthermore, the photographs must not be repetitive or cumulative. A trial court's decision to admit photographs of the victim's injuries will be upheld absent an abuse of discretion. *State v. Slagle* (1992), 65 Ohio St.3d 597, 602, 605 N.E.2d 916, 923.

{¶ 26} In this case, none of the eleven photographs admitted was so gruesome that the danger of prejudice outweighed their probative value. The photographs were relevant in depicting the crime scene and illustrative of the coroner's autopsy report. Certain photographs which showed the incision in the victim's neck opened up during the autopsy and which showed a metal probe protruding from the severed artery were not misleading and were probative, since they illustrated the manner in which the wound was inflicted. *State v. Murphy* (1992), 65 Ohio St.3d 554, 579, 605 N.E.2d 884, 904-905. Several of the photographs may have been repetitive. However, we find that any error in admitting repetitive photographs was harmless.

{¶ 27} Appellant also alleges that it was error for the court to submit Detective Swihart's taped interview with McGuire to the jury during its deliberations. McGuire claims that the interview, which was played during trial, was overly emphasized when the court allowed the tape into the jury room.

{¶ 28} However, there is no error in allowing the jury to view or hear for a second time an exhibit properly admitted into evidence. *State v. Loza* (1994), 71 Ohio St.3d 61, 79-80, 641 N.E.2d 1082, 1103; *State v. Clark* (1988), 38 Ohio St.3d 252, 257, 527 N.E.2d 844, 851. Sending properly admitted evidence into jury deliberations rests within the sound discretion of the trial judge. *Id.* In this case, the judge did not abuse his discretion in allowing the jury access to the taped interview. Therefore, appellant's sixth proposition of law is meritless.

## SUFFICIENCY OF EVIDENCE

**{¶ 29}** In Proposition of Law Nine, the appellant argues that the state failed to introduce sufficient evidence to prove all the elements of rape and felony murder beyond a reasonable doubt.

**{¶ 30}** When a defendant challenges the sufficiency of evidence, we determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. After reviewing the evidence in this case, we find it sufficient to support appellant's convictions.

**{¶ 31}** McGuire's statements to the police tended to show guilt. He had detailed knowledge of the crime, correctly stating how Joy was raped, the way she was stabbed, where the crime took place, and where the knife was hidden. McGuire explained that these details came from what Jerry Richardson had told him the day after the murder, and that McGuire still remembered the details ten months later when he decided to talk to the police. However, the state's DNA expert testified that Richardson could not be the sole source of sperm.

**{¶ 32}** The DNA evidence was consistent with McGuire's guilt, since his DNA possessed characteristics similar to the DNA of sperm found on the victim's body. The DNA did not conclusively eliminate Richardson or Kenny Stewart, but they were possible sperm sources only if there was more than one source. Furthermore, there was evidence that Kenny was at work at the time of the murder, and Richardson could not have been driving his mother's car as McGuire claimed.

**{¶ 33}** Additionally, McGuire admitted guilt to Willie Reeves and Shawn Baird. Likewise, Jack Stapleton testified that McGuire accidentally implicated himself in describing the murder to another inmate.

**{¶ 34}** Sufficient evidence was also presented indicating that McGuire was the principal offender. The DNA evidence implicated McGuire as the source of

semen found on Joy's body. Jerry Richardson denied any involvement in the murder, and there was also testimony that Richardson did not have access to the car that McGuire claimed Richardson used in the commission of the rape and murder. Willie Reeves also testified that when McGuire admitted to the rape and murder, he made no mention of any accomplices. Finally, there was evidence that Kenny Stewart was at work on the day of the murder and therefore could not have been an accomplice to the crime.

{¶ 35} There was also sufficient evidence to prove rape. Reeves testified that McGuire told him that Joy became hysterical because "he wanted to have sex with her, and she didn't want to, so he did it anyway." Moreover, the testimony of Lindloff, Reeves, and Stapleton shows that McGuire consistently used the word "rape" to describe what was done to Joy. The jury could infer from this evidence that the sexual contact was compelled by force or threat of force.

{¶ 36} Finally, the nature of the wound indicates specific intent to kill. McGuire also told Reeves that he killed Joy to avoid going to jail. Thus, there was sufficient evidence to convict appellant, and we reject his ninth proposition of law.

INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 37} In his eighth proposition of law, McGuire contends that his counsel in the court of appeals rendered ineffective assistance. Performance by appellate counsel will not be deemed ineffective unless that performance falls below an objective standard of reasonable representation and prejudice arises from counsel's performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.

{¶ 38} Appellant first raises counsel's failure to challenge the constitutionality of Ohio's death penalty statute. McGuire acknowledges that this court has repeatedly rejected attacks on the death penalty statute, but argues that appellate counsel should have preserved the issue for federal habeas review. McGuire cites a case from the Seventh Circuit on preserving issues for habeas

review. *Freeman v. Lane* (C.A.7, 1992), 962 F.2d 1252. However, the same court has also stated that a "failure to raise what appeared [at the time] to be a losing issue" is not deficient. *Lilly v. Gilmore* (C.A.7, 1993), 988 F.2d 783, 788.

{¶ 39} Next, McGuire argues that appellate counsel should have assigned as error the trial court's instructions on purpose, reasonable doubt, and two issues relating to the death-qualification of the venire. But each of these issues was waived at trial and we find no plain error.

{¶ 40} McGuire also complains that appellate counsel did not assign as error the trial court's failure to instruct the jury in mitigation on the nature and circumstances of the offense; the history, character, and background of the offender; and any other relevant factors. The court erred in not giving this instruction. The court did, however, give a list of specific factors for the jury to consider under R.C. 2929.04(B)(7). The only particular factor McGuire now claims that the jury could not consider under this list is McGuire's history of marijuana use. Under the circumstances of this case, reasonable appellate counsel could have decided that a history of marijuana use was of such little mitigation that the error in instructing the jury was harmless.

{¶ 41} McGuire argues that appellate counsel should have raised the ineffectiveness of trial counsel as set forth in McGuire's seventh proposition of law. McGuire first asserts that trial counsel failed to adequately *voir dire* potential jurors. Specifically, he complains that counsel did not examine them sufficiently to determine whether they were capable of considering all the mitigating factors. However, trial counsel is in a better position than is a reviewing court to decide how deeply to probe the views of a prospective juror. *Bradley*, 42 Ohio St.3d at 143-144, 538 N.E.2d 381. Furthermore, trial counsel did ask the veniremen whether they could consider mitigating circumstances, as opposed to automatically imposing the death penalty, and counsel could reasonably decide that it was unnecessary to ask prospective jurors whether they would find specific factors to

be mitigating. Cf. *State v. Wilson* (1996), 74 Ohio St.3d 381, at 385-387, 659 N.E.2d 292, 300-301. Since trial counsel were not deficient, McGuire's appellate counsel correctly decided to forgo raising this issue.

{¶ 42} Additionally, McGuire asserts that trial counsel were ineffective, since they failed to object to the reasonable doubt and purpose instructions at trial. However, a reasonable attorney would have had no basis to object to the instruction on reasonable doubt. *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339, 352-353. As for the purpose instruction, "counsel could reasonably have thought the trial court's strong instructions on specific intent to kill were sufficient to protect their client." *Id.* at 49, 630 N.E.2d at 350. Since McGuire failed to show a reasonable probability that but for counsel's failure to object, the trial would have been different, appellate counsel were justified in not raising this issue.

{¶ 43} Appellant argues that appellate counsel should have raised the fact that trial counsel failed to seek before trial the merger of the kidnapping and rape charges. However, R.C. 2941.25(A) states, "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Allied offenses of similar import do not merge until sentencing, since a conviction consists of verdict and sentence. See *State v. Osborne* (1976), 49 Ohio St.2d 135, 144, 3 O.O.3d 79, 83-84, 359 N.E.2d 78, 85, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1155; *State v. Waddy* (1992), 63 Ohio St.3d 424, 447, 588 N.E.2d 819, 836. Therefore, reasonably competent trial counsel would not have sought the merger of allied offenses before trial, and appellate counsel correctly ignored this issue.

{¶ 44} McGuire also claims that appellate counsel were ineffective for not raising a number of alleged penalty-phase errors made by trial counsel. First, he claims "inadequate preparation and presentation of mitigation evidence," because counsel should have hired a "mitigation specialist" to gather mitigating evidence.

However, he cites no authority that this is a requirement of effective assistance, and we hold that it is not. He further complains that trial counsel should have called more that just the two members of McGuire's family to testify in the penalty phase. But the record does not show that this resulted from inadequate investigation or incompetent decisionmaking. In addition, McGuire claims that Dr. Kuehnl, the defense psychologist who testified on his behalf, was inadequately prepared and should have performed routine tests to determine whether McGuire was suffering a mental disorder. McGuire appears to blame defense counsel for this, but the record provides no basis to do so. Kuehnl may have decided that such tests were unnecessary. If so, it seems reasonable that counsel would defer to the psychologist's professional judgment. Given the difficulty of proving ineffective assistance of trial counsel and the weakness of appellant's claims, McGuire's appellate counsel were not deficient in failing to raise the issue of ineffective trial counsel.

{¶ 45} Appellant contends that trial counsel failed to effectively argue residual doubt. This is based on the fact the counsel did not attempt to admit a statement made by Joy's husband Kenny that he had anal intercourse with Joy three or four days before the murder. Appellant wanted this statement admitted to demonstrate that Kenny was the source of the semen found on Joy's body at the time of the murder. This statement was correctly deemed inadmissible hearsay and was not admitted at trial. McGuire argues, however, that even if this statement was inadmissible in the guilt phase, it was admissible in the penalty phase because there, "the Rules of Evidence do not strictly apply." *State v. Landrum* (1990), 53 Ohio St.3d 107, 115, 559 N.E.2d 710, 720.

{¶ 46} However, Kenny's statement was not strong evidence in McGuire's favor. The statement that Kenny had consensual sex three to four days before the murder was not against his interest, as was the case in *Landrum*, where the statement was deemed admissible. No physical or other evidence corroborated the

fact that Kenny was the source of the semen found on Joy's body, unless there were two assailants. Kenny was at work at the time of the murder, and McGuire himself accused Jerry Richardson of the murder, not Kenny. As a result, McGuire has failed to show prejudice. His counsel's failure to proffer the statement in the penalty phase does not undermine confidence in the outcome. For the same reasons, such facts discount McGuire's argument in Proposition of Law One that the exclusion of Kenny Stewart's statement denied appellant due process under the United States Supreme Court's decision in *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297. *Chambers* held that the hearsay rule should not be mechanistically applied, and an excessively strict application of the hearsay rule that excludes highly reliable evidence may deny an accused due process. However, unlike *Chambers*, these facts indicate that the excluded hearsay statement in this case is not highly reliable evidence. Accordingly, Proposition of Law One, which argues that the evidence was wrongly excluded at the guilt phase, is also overruled.

{¶ 47} McGuire argues that appellate counsel should have argued the legal insufficiency of the evidence. Having found above that the state introduced sufficient evidence as a matter of law to support McGuire's conviction, we hold that appellate counsel's failure to argue this issue did not prejudice McGuire.

{¶ 48} McGuire contends that appellate counsel should have argued that the R.C. 2929.04(A)(7) felony-murder specification "duplicates and fails to narrow" the offense of felony-murder under R.C. 2903.01(B). Ohio precedent is clearly against McGuire, so he again argues that appellate counsel may have abandoned a federal constitutional claim. Our repeated holdings on this issue obviously mean that we believe the claim should fail in federal court too. There is no need to preserve futile claims.

{¶ 49} Next, appellant argues that appellate counsel should have challenged the admissibility of Willie Reeves's testimony that "I guess [McGuire] was gonna make it look like someone else did it." However, McGuire failed to challenge it at

trial. No prejudice exists, since appellate counsel's failure to challenge this single, relatively insignificant statement by Reeves does not undermine confidence in the fairness or reliability of the appeal.

{¶ 50} McGuire further contends that appellate counsel should have challenged the rebuttal testimony of Shirley Dinkins as irrelevant or inadmissible, apparently under Evid.R. 403(A) and 611(A). However, Evid.R. 401 broadly defines "relevance," and judges have broad discretion in admitting or excluding evidence, and controlling the order of interrogating witnesses. We hold that the trial court committed no error.

{¶ 51} Finally, McGuire complains that his appellate counsel inadequately raised three issues. In the court of appeals, the eleventh assignment of error consisted of twenty-one alleged trial errors, supported only by citation to the record. Appellate counsel did not explain why the alleged errors were errors or how they had prejudiced McGuire. The assignment of error alleged that taken together, all of the errors denied appellant a fair trial. Pursuant to App.R. 12(A)(2), the court of appeals refused to address fourteen of these issues.

{¶ 52} McGuire now singles out three of those fourteen issues and argues that appellate counsel should have fully briefed them. He contends once more that appellate counsel "may have abandoned valid federal constitutional claims." Again, we hold that there was no need to preserve these futile claims.

{¶ 53} McGuire has not shown that appellate counsel rendered ineffective assistance with respect to any of these issues by showing both deficient performance and prejudice. Accordingly, McGuire's eighth proposition of law is overruled.

## *MIRANDA* ISSUE

{¶ 54} In his tenth proposition of law, McGuire claims that his statements to law enforcement officers should have been suppressed because he was not

advised of his rights. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

{¶ 55} McGuire's initial interview occurred with corrections officer Goodwin after McGuire repeatedly asked the officer that he be allowed to talk to detectives Lindloff and Swihart. Goodwin did not read appellant his *Miranda* rights. Goodwin took McGuire to a booking room, then asked whether McGuire had an attorney, "and he stated no, that he wanted to give me a statement on the murder case." McGuire proceeded to give a voluntary statement concerning the murder.

{¶ 56} Though Goodwin did not advise McGuire of his *Miranda* rights, it was unnecessary to do so. *Miranda* does not affect the admissibility of "[v]olunteered statements of any kind." 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. Furthermore, appellant initiated the discussion with police and volunteered the information. There was no evidence that Goodwin even asked any questions during the statement. Thus, appellant was not subject to custodial interrogation and was not entitled to *Miranda* warnings. *State v. Roe* (1989), 41 Ohio St.3d 18, 22, 535 N.E.2d 1351, 1357.

{¶ 57} Further interviews with McGuire all were proceeded by valid *Miranda* warnings and waivers by McGuire. McGuire claims that he did not voluntarily waive his rights due to his lack of education and illiteracy. However, the record of the suppression hearing contains no evidence about McGuire's lack of education, nor is there any evidence that officers used any coercive tactics in obtaining statements.

{¶ 58} In any event, the totality of the circumstances indicates that McGuire voluntarily waived his rights. He repeatedly begged to talk to detectives and tried to obtain concessions in exchange for information. He also gave a self-exculpatory version of events. The record depicts a man who voluntarily cooperated, or

pretended to for his own purposes, not one who was coerced. Therefore, McGuire's tenth proposition lacks merit.

## INDEPENDENT SENTENCE REVIEW

{¶ 59} In accordance with R.C. 2929.05(A), we must now independently weigh the aggravating circumstances against the mitigating factors in this case, as well as determine whether the sentence is proportionate to death sentences in similar cases.

{¶ 60} The evidence in this case establishes beyond a reasonable doubt that appellant committed murder while committing, attempting to commit, or fleeing immediately after committing or attempting to commit rape, and was the principal offender, the specification set forth in R.C. 2929.04(A)(7).

{¶ 61} In mitigation, the appellant presented evidence regarding his history, character, and background pursuant to R.C. 2929.04(B). Furthermore, appellant offered the following factors for the jury to consider under R.C. 2929.04(B)(7): any lingering or residual doubts about the defendant's guilt of the offense charged or an aggravating circumstance; the defendant's potential for rehabilitation; the ability to make a well-behaved and peaceful adjustment to life in prison; the ability to lead a useful life behind bars if sentenced to life imprisonment; the defendant's devotion to, and care of, his family members; whether the defendant was the victim of childhood abuse; whether the defendant was deprived of parental nurturing. The appellant presented no evidence of any mitigating factors under the specific factors of R.C. 2929.04(B)(1) through (6).

{¶ 62} Initially, appellant offered residual doubt as a mitigating factor for the jury to consider in the penalty phase of his trial. Residual doubt has been described as "a lingering uncertainty about facts, a state of mind that exists somewhere between 'beyond a reasonable doubt' and 'absolute certainty.' " *Franklin v. Lynaugh* (1988), 487 U.S. 164, 188, 108 S.Ct. 2320, 2335, 101 L.Ed.2d 155, 175 (O'Connor, J., concurring). In past cases, this court has held that residual

doubt could be a mitigating factor. *E.g., State v. Watson* (1991), 61 Ohio St.3d 1, 572 N.E.2d 97; *State v. Richey* (1992), 64 Ohio St.3d 353, 372, 595 N.E.2d 915, 931; *State v. Gillard* (1988), 40 Ohio St.3d 226, 234, 533 N.E.2d 272, 281. However, we recently held that regardless of this, defendant is not entitled to an instruction on residual doubt. *State v. Garner* (1995), 74 Ohio St.3d 49, 56-57, 656 N.E.2d 623, 632.

{¶ 63} The United States Supreme Court in *Franklin v. Lynaugh, supra,* held that states are not required to allow a defendant the opportunity to argue residual doubt as a mitigating circumstance. The court stated that residual doubt did not have to be considered as a mitigating factor because it was not relevant to the defendant's character, record, or any circumstances of the offense. *Lynaugh,* 487 U.S. at 174, 108 S.Ct. at 2327, 101 L.Ed.2d at 166.

{¶ 64} R.C. 2929.04(B) states that the nature and circumstances of the offense and the history, character, and background of the offender shall be considered in weighing against the aggravating circumstances of the crime. The statute also lists six specific factors to be considered, as well as a seventh factor that allows the sentencing body to consider "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death." As Justice Resnick astutely noted in her dissent in *Watson*, residual doubt is mentioned nowhere in this statutory scheme, and further, cannot be considered under the catchall factor of R.C. 2929.04(B)(7). That is because R.C. 2929.04(B)(7) must be read in relation to R.C. 2929.04(B), and allows consideration only of those other factors relevant to the issue of whether the offender should be sentenced to death, that is, only those factors relating to the nature and circumstances of the offense, and the history, character, and background of the offender. *Watson*, 61 Ohio St.3d at 19, 572 N.E.2d at 112. Residual or lingering doubt as to the defendant's guilt or innocence is not a factor relevant to the imposition of the death sentence because it has nothing to do with the nature and circumstances of the offense or the history, character, and

background of the offender. *Id.* See, also, *King v. Florida* (1987), 514 So.2d 354, 358; *People v. McDonald* (1995), 168 Ill.2d 420, 456, 214 Ill.Dec. 125, 140, 660 N.E.2d 832, 847; *State v. Walls* (1995), 342 N.C. 1, 52-53, 463 S.E.2d 738, 765-766.

{¶ 65} Our system requires that the prosecution prove all elements of a crime beyond a reasonable doubt. Therefore, it is illogical to find that the defendant is guilty beyond a reasonable doubt, yet then doubt the certainty of the guilty verdict by recommending mercy in case a mistake has occurred. *Watson,* 61 Ohio St.3d at 20, 572 N.E.2d at 112 (Resnick, J., dissenting). Residual doubt casts a shadow over the reliability and credibility of our legal system in that it allows the jury to second-guess its verdict of guilt in the separate penalty phase of a murder trial. "Thus, if residual doubt is reasonable and not simply possible or imaginary, then an accused should be acquitted, and not simply have his death sentence reversed." *Id.*

{¶ 66} Residual doubt is not an acceptable mitigating factor under R.C. 2929.04(B), since it is irrelevant to the issue of whether the defendant should be sentenced to death. Therefore, Proposition of Law Four, urging us to vacate the death penalty on the basis of residual doubt, is overruled.

{¶ 67} Apart from inappropriately relying on residual doubt, appellant presented a number of other factors offered in mitigation. Doris Newton, McGuire's mother, and Tonya Cross, his half-sister, testified about McGuire's turbulent childhood. The defendant was born in 1960. His parents divorced two years later, leaving McGuire in the sole care of his mother. McGuire's father took his older brother away, and McGuire had little contact with them after that, except when he would run away from home to see them.

{¶ 68} McGuire lived with his mother until he was eighteen. During that time, his mother was involved with several men, some of who physically beat her in front of the appellant, who was required on occasion to run for help. His mother and half-sister testified that these men did not abuse the appellant physically;

however, they did inflict mental abuse by calling McGuire names, yelling at him, and generally treating him poorly. Some of these men, however, were good to the defendant, and one continued to be available to help him even after the marriage with appellant's mother ended.

**{¶ 69}** Defendant was also moved frequently, attending various schools, but eventually dropping out after ninth grade. Defendant began using marijuana at the age of nine and continued doing so until his incarceration in 1990. While imprisoned, appellant has taken strides to improve his education. He has also committed only minor infractions while incarcerated.

**{¶ 70}** Appellant has not demonstrated that the factors listed as mitigation outweigh the aggravated nature of the murder. While appellant's mitigation evidence is entitled to some weight, it is insufficient to overcome the aggravating circumstance in this case, that defendant committed rape in conjunction with murder. We therefore conclude under our independent review that the aggravating circumstances outweigh the mitigating factors in this case.

**{¶ 71}** Finally, R.C. 2929.05(A) requires that we review the sentence in this case and determine whether it is proportionate to the sentence imposed in similar cases. This court has upheld the death sentence in a number of cases where only a single felony-murder specification was present. *State v. Phillips* (1995), 74 Ohio St.3d 72, 656 N.E.2d 643; *State v. Fox* (1994), 69 Ohio St.3d 183, 631 N.E.2d 124; *State v. Simko* (1994), 71 Ohio St.3d 483, 644 N.E.2d 345. Thus, appellant's death sentence in this case is neither excessive nor disproportionate.

**{¶ 72}** Accordingly, we affirm both appellant's convictions and sentence of death.

*Judgment affirmed.*

DOUGLAS, RESNICK, COOK and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and PFEIFER, J., concur in judgment only.

———————————

**PFEIFER, J., concurring in judgment only.**

{¶ 73} The death penalty is special. Ohio's death penalty statutory scheme, with its numerous and high hoops, is less a protection for defendants than it is a protection for our status as a civilized society. No one could deny that the execution of an innocent person would be the ultimate failure of our justice system. The mitigating factor of residual doubt reaches that deepest, most basic of concerns.

{¶ 74} The majority's contention that R.C. 2929.04(B) does not allow for the consideration of residual doubt is simply wrong. R.C. 2929.04(B) instructs the jury to consider "the nature and circumstances of the offense, the history, character, and background of the offender," *and* the seven statutory factors, the seventh of which calls for a consideration of "[a]ny *other* factors that are relevant to the issue of whether the offender should be sentenced to death." (Emphasis added.) The use of the words "any other" in R.C. 2929.04(B)(7) specifically calls for a consideration of factors not considered in any other portion of R.C. 2929.04(B). What factor could be more relevant than identity?

{¶ 75} Randall Dale Adams would certainly argue for its relevance. Adams was sent to Texas's death row for the murder of a Dallas policeman in 1976. See Radelet, Bedau & Putnam, In Spite of Innocence: Erroneous Convictions in Capital Cases (1992), Chapter 3. Adams, who had recently moved to Dallas from Grove City, Ohio, had met sixteen-year-old David Harris on the morning of the day before the murder. They spent the day together, driving around Dallas. They disputed what occurred in the evening. Adams claimed that Harris dropped him off near his motel at around 9:30 that evening. Harris testified that he and Adams went to a late show at a drive-in theater, and that after that, when the pair were pulled over shortly after midnight by police for driving without headlights, Harris slumped unseen in the front seat while Adams shot one of the officers in cold blood. The jury believed Harris, and the judge sentenced Adams to death.

{¶ 76} By chance, Adams's case caught the attention of filmmaker Errol Morris. Morris's film about the case, "The Thin Blue Line" (1988), generated publicity in the case and featured self-incriminating footage of Harris, filmed while he was serving time on death row for another murder. On March 21, 1989, Adams was finally released.

{¶ 77} Certainly, residual doubt is an appropriate consideration in only a few cases. Still, its use should not be considered "illogical." It is entirely logical to be certain beyond a reasonable doubt as to a man's guilt, yet not be certain enough to send him to his death. Residual doubt acknowledges our humanity—our ability not just to spit out data, but to recognize the subtle shadings that are a part of life. The factoring in of humanity when dealing with its ultimate decision is both relevant and logical.

{¶ 78} Residual doubt, when present, only spares a man from death—it does not leave him walking the streets. A life sentence leaves him still with the prospect of no prospects, alive and dead at the same time. If, as a civilized society, we are to be certain of anything, it must be that we are sending the correct person to his death. Residual doubt is not for every case, and not for the present one. But I will not be a part of removing the concept from the case for which it is right.

MOYER, C.J., concurs in the foregoing opinion.

———————————

APPENDIX

{¶ 79} Proposition of Law One: "The trial court violates the accused's right to compulsory process under the Sixth and Fourteenth Amendments to the United States Constitution when it excludes evidence that tends to show that someone other than the accused was the source of the semen taken from the victim in a trial for felony murder and rape. The exclusion of such evidence also violates the accused's right to due process under the Fourteenth Amendment to the United States Constitution."

**{¶ 80}** Proposition of Law Two: "A capital defendant's right to fully individualized and reliable sentencing under the Eighth and Fourteenth Amendments to the United States Constitution is violated when the trial court's instructions on mitigating factors preclude the jury's consideration of the history, character and background of the defendant, the nature and circumstances of the offense and nonstatutory mitigating factors. A preclusive jury instruction on mitigating factors also infringes a capital defendant's liberty interest in Ohio Rev.Code Ann. § 2929.04(B) (Anderson 1993) as protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

**{¶ 81}** Proposition of Law Three: "Appellant McGuire's right to a reliable capital sentencing phase was undermined because the trial court improperly led the jury to believe that it was not responsible for its death penalty verdict in violation of the Eighth and Fourteenth Amendments to the United States Constitution."

**{¶ 82}** Proposition of Law Four: "Dennis McGuire's death sentence is inappropriate because there is residual doubt whether he was the principal offender in Joy Stewart's murder. This court should vacate Mr. McGuire's death sentence pursuant to its independent review under Ohio Rev.Code Ann. § 2929.05(A)."

**{¶ 83}** Proposition of Law Five: "Appellant McGuire's death sentence is unreliable in violation of the Eighth and Fourteenth Amendments to the United States Constitution as the result of penalty phase and sentencing errors. The penalty phase and sentencing errors also infringed appellant's right to due process under the Fourteenth Amendment."

**{¶ 84}** Proposition of Law Six: "The cumulative effect of evidentiary errors that pervaded this trial deprived appellant of a reliable trial and fair sentencing determination in violation of his rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 10, 16 of the Ohio Constitution."

**{¶ 85}** Proposition of Law Seven: "Defense Counsel's actions and omissions at Mr. McGuire's capital trial deprived him of the effective assistance of trial counsel as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 9, 10 and 16 of the Ohio Constitution."

**{¶ 86}** Proposition of Law Eight: "Appellant McGuire's right to due process under the Fourteenth Amendment to the United States Constitution was violated by the ineffective assistance of counsel in the court of appeals."

**{¶ 87}** Proposition of Law Nine: "The state failed to introduce sufficient evidence to prove all the elements of rape and felony murder beyond a reasonable doubt. As a result appellant was deprived of his right to due process of law under the Fourteenth Amendment of the United States Constitution as well as Article I, Section 16 of the Ohio Constitution."

**{¶ 88}** Proposition of Law Ten: "The trial court erred in failing to suppress appellant McGuire's statement in violation of his rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution as well as Article I, Sections 10 and 16 of the Ohio Constitution."

**{¶ 89}** Proposition of Law Eleven: "The accused's right to due process under the Fourteenth Amendment to the United States Constitution is violated when the state is permitted to convict upon a standard of proof below the required standard of proof beyond a reasonable doubt."

**{¶ 90}** Proposition of Law Twelve: "A capital defendant's right to due process under the Fourteenth Amendment is violated when the prosecutor seeks commitments from the prospective jurors at voir dire to impose the death penalty in the case before them. A capital defendant's right to a reliable death sentence and to due process is also violated when the trial court death qualifies the prospective jurors."

**{¶ 91}** Proposition of Law Thirteen: "A capital defendant's due process liberty interest in Ohio Rev.Code Ann. § 2945.25(C) is violated when a prospective

juror with conscientious objections to capital punishment is removed from the jury panel unless the prospective juror is unequivally [*sic*] opposed to capital punishment under all circumstances."

{¶ 92} Proposition of Law Fourteen: "A capital defendant's right to reliable sentencing under the Eighth and Fourteenth Amendments to the United States Constitution is violated when the trial court refuses to instruct the jury that it may consider mercy in its penalty phase deliberations."

{¶ 93} Proposition of Law Fifteen: "A charge that permits the jury to convict the defendant upon a strict liability standard when the defendant is charged with a specific intent offense, violates the Sixth and Fourteenth Amendments to the United States Constitution."

{¶ 94} Proposition of Law Sixteen: "A criminal defendant's right to due process under the Fourteenth Amendment to the United States Constitution is violated when the jury is instructed that the defendant's purpose to kill is presumed from the predicate facts of the offense. A jury charge that presumes the mens rea element from the predicate facts also usurps the jury's role of fact finder in violation of the Sixth and Fourteenth Amendments to the United States Constitution."

{¶ 95} Proposition of Law Seventeen: "It is error for the trial court to impose a death sentence on appellant McGuire based on his commission of a felony murder when the aggravating circumstance merely duplicated the substantive offense. This death sentence violates appellant McGuire's rights under Eighth [*sic*] and Fourteenth Amendments of the United States Constitution."

{¶ 96} Proposition of Law Eighteen: "The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and §§ 2, 9, 10 and 16 of Article I of the Ohio Constitution establish the requirements for a valid death penalty scheme. Ohio Revised Code, §§ 2903.01, 2929.02, 2929.21 [*sic*, 2929.021], 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the prescribed

constitutional requirements and are unconstitutional, both on their face and as applied."

_____