[Cite as *State v. Beebe*, 2018-Ohio-1899.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 17CAC080055 |
| | : | |
| VINCENT L. BEEBE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:               Appeal from the Delaware Municipal
                                       Court, Case No. 16 CRB 03567


JUDGMENT:                              AFFIRMED


DATE OF JUDGMENT ENTRY:                May 11, 2018


APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

ELIZABETH A. MATUNE                    APRIL F. CAMPBELL
Delaware City Prosecutor               545 Metro Place S., Ste. 100
70 North Union St.                     Dublin, OH 43017
Delaware, OH 43015

*Delaney, J.*

{¶1} Appellant Vincent L. Beebe appeals from the judgment entry of conviction upon one count of aggravated menacing entered in the Delaware Municipal Court. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

*An Incident of Road Rage:  Appellee's Case*

{¶2}  This case arose on November 18, 2016, shortly after 10:00 p.m., when John Doe and his wife Jane drove home after going out to dinner.  The couple stopped at the intersection of State Route 315 and Powell Road in Delaware County, Ohio.  The Doe car was the first vehicle stopped at the traffic light, ahead of a line of other vehicles.

{¶3}  The light changed and Doe proceeded up the hill of Powell Road, traveling around the speed limit of 35 M.P.H.  John Doe noticed a vehicle speed up behind him and come very close to the rear of his vehicle, flashing its lights.  The speed limit increased to 45 M.P.H. and Doe increased his speed, but the vehicle continued "on his tail."  He increased his speed but the vehicle continued to tailgate him.

{¶4}  Doe and his wife were concerned and traveled faster to a traffic light on Bennett Parkway.  Doe stopped at the red light in the left lane, intending to make a left turn.  The vehicle pulled up behind Doe again, with lights flashing.  The Does thought something must be wrong, possibly an issue with one of the vehicles or a medical issue.  John Doe put his car in park and got out.  The other driver was already out of his vehicle.

{¶5}  John Doe asked, "Is there a problem?" and the other driver responded, "I'm going to kick your homeboy ass."  Doe asked, "What's going on?" and the other driver said he was a "CPD" officer.  Doe responded, "So what?" and asked to see his badge.

The passenger in the other car then stepped out of the vehicle and told Doe, "We're going to f*** you up." The driver told Doe, "I'm going to shoot your sorry ass." Doe did not see a gun.

{¶6} At this point Doe got back into his own car, locked the doors, and told his wife to call 911.

{¶7} The driver of the other car, identified as appellant, returned to his vehicle and pulled up alongside the Doe vehicle, with appellant and his passenger "yelling and screaming." Jane Doe told the pair she had 911 on the phone although the call had not gone through. The light changed and John Doe made the left turn. Appellant and his passenger continued west on Powell Road and John Doe intended to proceed on his way home through a neighborhood.

{¶8} Doe was next stopped at a stop sign when appellant's vehicle approached again, at a high rate of speed with lights flashing. Doe was alarmed because appellant had returned to continue the confrontation. The Does called 911 and John Doe spoke to a dispatcher who transferred him to the Ohio State Highway Patrol. While the Does spoke to the dispatcher, appellant continued to follow them, pulling up again beside the car and driving away when Jane Doe said she was talking to 911. The Does obtained a description of the vehicle and the plate number, and John Doe met the state trooper at the Powell Police Department to complete a written statement.

{¶9} John Doe testified he was afraid for his wife and himself; he feared for his life because appellant threatened to shoot him and Doe didn't know if appellant might carry out his threat, or ram his car, or force him off the road.

{¶10} Jane Doe testified at trial and her description of events mirrored her husband's, although she remained in the vehicle throughout the ordeal and didn't hear everything that was said. She testified that appellant's manner was loud, agitated, and threatening, and she was afraid.

{¶11} Trooper Scott Maul also testified on behalf of appellee. He took John Doe's written statement on the night of the incident and eventually spoke with appellant by phone. Appellant told Maul his passenger yelled something at Doe who "gave them the finger" and drove off. To Maul's knowledge, no threats were made by Doe.

*Defense Case: "No Big Deal"*

{¶12} Joshua Anderson, appellant's friend and his passenger on the night in question, testified on appellant's behalf. Anderson said John Doe repeatedly "brake-checked" them, yelled, and "flipped [them] off." Anderson denied threatening the Does himself and claimed the back-and-forth went on for about an hour but no one got out of their vehicles at any point.

{¶13} Appellant also testified and his account generally aligned with Anderson's; appellant denied threatening Doe. Appellant said Doe "brake-checked" him repeatedly, and acknowledged he flashed his lights at Doe. Appellant claimed the vehicles were aligned with each other and there was yelling when Doe repeatedly pulled into "oncoming traffic." How this occurred is not clear from appellant's testimony. Appellant said neither he nor Anderson ever got out of their vehicle. Appellant said he went home after the interaction and "didn't think anything of it" because he "didn't think it was a big deal."

*Aggravated Menacing Charge, Trial, and Conviction*

{¶14} Appellant was charged by criminal complaint with one count of aggravated menacing pursuant to R.C. 2903.21(A), a misdemeanor of the first degree, and entered a plea of not guilty. On June 28, 2017, appellee filed a motion in limine to exclude "the fact that the victim has a concealed carry license and may have had his legally possessed firearm on him during the commission of this crime."

{¶15} The matter proceeded to trial by jury and appellant was found guilty as charged. The trial court sentenced appellant to a jail term of 60 days and stayed the sentence pending appeal.

{¶16} Appellant now appeals from the trial court's judgment entry of conviction and sentence dated July 11, 2017.

{¶17} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶18} "THE TRIAL COURT ABUSED ITS DISCRETION IN NOT ALLOWING DEFENSE TO QUESTION THE ALLEGED AGGRAVATED MENACING VICTIM ABOUT THE WEAPON HE POSSESSED, THEREBY DENYING BEEBE'S RIGHT TO CONFRONT THE ESSENTIAL WITNESS AGAINST HIM."

**ANALYSIS**

{¶19} In his sole assignment of error, appellant argues he should have been permitted to cross-examine John Doe about whether Doe had a gun during the road-rage incident because if he possessed a gun that night, that fact is relevant to whether he feared serious physical harm. On the basis of the record before us, we disagree.

{¶20} At some point prior to trial, the prosecutor, defense counsel, John Doe, and a victim advocate met for the purpose of allowing defense counsel to speak to Doe. It is not clear from the record what was said, but appellant asserted John Doe made statements at this meeting which were "inconsistent" with his written statement to Trooper Maul.

{¶21} Arising from this meeting, appellant subpoenaed the prosecutor and victim advocate as trial witnesses, and appellee filed motions to quash both subpoenas. The trial court granted the motion to quash the subpoena for the prosecutor, noting that even after an oral hearing, it was not evident that John Doe made inconsistent statements or how any such statements would be relevant at trial.

{¶22} The issue was (somewhat) clarified when appellee filed a motion in limine on June 28, 2017, moving the trial court to exclude evidence that John Doe "has a concealed carry license and may have had his legally possessed firearm on him during the commission of this crime" because any such evidence was irrelevant. Immediately prior to trial, an oral hearing was held and the trial court asked why appellant sought to introduce the evidence. Appellant responded that it went to John Doe's mindset, i.e., whether he was in fear of serious physical harm from appellant. Appellant acknowledged he was not raising a self-defense argument. The trial court concluded that any such evidence was likely irrelevant, but deferred ruling on the motion because the evidence would be considered in the context of what evidence developed at trial.

{¶23} John Doe was appellee's first witness and testified as described supra. During a contentious cross-examination in which defense trial counsel was admonished several times, defense counsel asked Doe whether he told appellant that he (Doe) had a

gun. Appellee's objection was sustained and the parties had a bench conference. The trial court asked defense trial counsel whether she had a good-faith basis to ask the question, and defense trial counsel acknowledged no witness would testify that Doe told appellant he had a gun.[1] T. 175. Defense trial counsel argued Doe told her, the prosecutor, and the victim advocate he had a gun. The trial court established, and appellant acknowledged, no evidence existed that Doe told appellant he had a gun on the night of the incident. T. 180-181. The trial court therefore sustained appellee's objection and instructed the jury to disregard the question.

{¶24} We note that in the remaining testimony of each witness (Jane Doe, Trooper Maul, Joshua Anderson, and appellant) no evidence was ever introduced that John Doe had a gun or told appellant that he had a gun. In fact, Anderson and appellant testified they did not feel threatened and thought the incident was "no big deal," and Maul testified he had no evidence Doe made any threats.

{¶25} On appeal, however, appellant argues the trial court impermissibly restricted defense trial counsel's questions to Doe "about the gun in his possession." As we have stated supra, it is not evident in this record that Doe had a gun in his possession on the night of November 18, 2016, or that he told appellant that he had a gun. We therefore share the trial court's confusion as to how any such evidence is relevant, if it exists.

---

[1] A cross-examiner may ask a question if he or she has a good-faith belief that a factual predicate for the question exists. *State v. Jenkins*, 5th Dist. Stark No. 2008 CA 00191, 2009-Ohio-6254, ¶ 43, appeal not allowed, 124 Ohio St.3d 1522, 2010-Ohio-1075, 923 N.E.2d 622, citing *State v. Gillard*, 40 Ohio St.3d 226, 533 N.E.2d 272 (1988), paragraph two of the syllabus, abrogated on other grounds, and *State v. McGuire*, 80 Ohio St.3d 390, 1997-Ohio-335, 686 N.E.2d 1112.

{¶26} Appellant's argument that any such evidence would go to the mindset of John Doe and whether he truly felt under threat of serious physical harm by appellant is premised upon speculation unsupported by the record.

{¶27} Generally, the trial court has broad discretion in imposing limits on the scope of cross-examination. *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993); *State v. Cobb*, 81 Ohio App.3d 179, 183, 610 N.E.2d 1009 (9th Dist.1991). An appellate court will not interfere with a trial court's decision about the scope of cross-examination absent an abuse of discretion. *In re Fugate*, 2nd Dist. Darke No. 1512, unreported (Sept. 22, 2000). The term abuse of discretion "connotes more than an error in * * * judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶28} Based upon the record before us, we cannot conclude that the trial court abused its discretion in sustaining appellee's objection to appellant's question of John Doe as to whether he had a gun on the night in question.  *See, Jenkins*, supra, 5th Dist. Stark No. 2008 CA 00191, 2009-Ohio-6254, appeal not allowed, 124 Ohio St.3d 1522, 2010-Ohio-1075, 923 N.E.2d 622; *State v. Ickes*, 5th Dist. Tuscarawas No. 1999AP080052, 2000 WL 874728, appeal not allowed, 90 Ohio St.3d 1439, 736 N.E.2d 902 (2000);  *State v. Southall*, 5th Dist. Stark No. 2008 CA 00105, 2009-Ohio-768; *State v. Martin*, 5th Dist. Delaware No. 14 CAA 03 0016, 2015-Ohio-1106, appeal not allowed, 143 Ohio St.3d 1500, 2015-Ohio-4468, 39 N.E.3d 1271.

{¶29} Appellant's sole assignment of error is overruled.

**CONCLUSION**

{¶30} Appellant's sole assignment of error is overruled and the judgment of the Delaware County Municipal Court is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.