OPINION
Defendant-appellant, Steven Rittenhouse, appeals his conviction for aggravated robbery in the Fayette County Court of Common Pleas. For the reasons that follow, we affirm.
On the evening of August 16, 1998, Danny Boisel ("Boisel") was the only employee working at Buzzy's Drive Thru in Washington Court House, Ohio. Buzzy's Drive Thru is a drive-through beverage store located in a building with two overhead garage doors at each end of the building. There is an additional walk-through door in the building used as an employee entrance, but walk-in customers often use that door. Since it was hot outside, the door to the employee entrance was propped open to facilitate air circulation in the store.
Shortly before 9:00 p.m., a shirtless white male with long hair and a goatee, ultimately identified as appellant, entered the store through the employee entrance. Boisel recognized appellant from two visits to the store earlier that evening. Boisel remembered selling forty-ounce bottles of King Cobra beer to appellant on both occasions, so he asked appellant if he wanted to purchase the same beer this time. Appellant responded affirmatively. Boisel proceeded to get the beer from a refrigerated cooler. Boisel brought the beer to the counter where the cash register was located. Boisel turned around for a brief moment and when Boisel turned to face appellant again, appellant grabbed Boisel by the throat and placed a knife against his neck. Appellant demanded that Boisel give all the money to him. Boisel opened the cash register and gave appellant approximately $880 in cash. Appellant fled through the same door he entered and escaped on foot.
When Boisel was certain that the robber was at a safe distance, he closed and locked the store's overhead doors and the door to the employee entrance. He called 911 and the police arrived at 8:58 p.m. Officer Rusty Lowe of the Washington Court House Police interviewed Boisel and took his statement.
Several days later, Officer Lowe received a note from Officer Tom Queen, who indicated he had received information that appellant was a suspect in the robbery. Based on this information, Officer Lowe created a photograph lineup that included appellant. Officer Lowe selected three other photos from the police files portraying individuals with similar characteristics as appellant. Officer Lowe showed the photographs to Boisel and he immediately identified appellant as the man who robbed him at knifepoint.
Appellant was indicted and arrested on one count of aggravated robbery in violation of R.C. 2911.01, a felony of the first degree. At trial, appellant pled not guilty to the charge. In his defense, appellant offered the testimony of his girlfriend and her son in an attempt to establish an alibi. Appellant contends that he was at home during the time of the robbery.
Appellant's girlfriend, Reba McCullough ("McCullough"), testified that she was home on August 19, 1998 until about 8:40 p.m. or 8:45 p.m. She then went to Fuel Mart with her sister to purchase some groceries. She stated that she returned home between 9:20 p.m. and 9:25 p.m. McCullough testified that appellant was home before she left and when she returned. When McCullough returned, she found appellant sitting on the living room couch.
McCullough's son, Chris Simmons ("Simmons"), testified that he returned from a friend's house at 9:00 p.m. and discovered that appellant was in the bathroom. Simmons stated that appellant remained in the bathroom until 9:30 p.m. or 10:00 p.m.
The jury found appellant guilty of aggravated robbery. The trial court sentenced appellant to ten years in prison and ordered him to pay restitution in the amount of $700. From his conviction, appellant filed a timely notice of appeal, raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN IMPOSING THE MAXIMUM SENTENCE OF INCARCERATION.
In his first assignment of error, appellant asserts that the trial court erred by imposing upon him the maximum sentence. Appellant argues that he did not commit the worst form of aggravated robbery because he only took $800 and he did not cause any physical or psychological harm to Boisel.
Pursuant to R.C. 2953.08(G)(1), an appellate court may not disturb a sentence imposed under Senate Bill 2 unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law or statute. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Garcia (1998),126 Ohio App.3d 485, 487. The sentence imposed upon the offender should be consistent with the overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender." R.C. 2929.11(A).
Pursuant to R.C. 2929.14(A)(1), for a felony of the first degree, such as aggravated robbery, the trial court may impose a sentence of three, four, five, six, seven, eight, nine, or ten years.
A trial court may impose the maximum term of imprisonment upon an offender only if the trial court finds on the record that the offender "committed the worst forms of the offense"; "pose[s] the greatest likelihood of committing future crimes"; is a major drug offender subject to R.C. 2929.14(D)(3); or is a repeat violent offender subject to R.C. 2929.14(D)(2). R.C. 2929.14(C). When making its findings, the trial court is not required to state the reasons underlying its findings. See State v. Edmonson
(1999), 86 Ohio St.3d 324.[1]
When reviewing the seriousness of an offender's conduct, the trial court is guided by R.C. 2929.12(B), which lists relevant factors to consider. These factors include:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6) The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
The trial court may also consider "any other relevant factors." R.C. 2929.12(B).
When reviewing whether the offender poses the greatest likelihood of recidivism, the trial court is guided by R.C.2929.12(D), which lists factors for the trial court's consideration. These factors include:
 (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense.
 (2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense.
In addition, the trial court may also consider "any other relevant factors." R.C. 2929.12(E).
In this case, the trial court found on the record that appellant's prior felony record of violent crimes, including domestic violence, resisting arrest, battery, and aggravated assault, was an "aggravating factor" that supported a maximum term of imprisonment. In addition, the trial court noted that holding a knife against a person's throat was much like holding a gun to a person's head. Although R.C. 2929.12(B) does not specifically enumerate these factors, we find that they are appropriate for consideration as "relevant factors."
The trial court also found that the following facts demonstrated that appellant posed a risk of recidivism: Appellant showed no remorse at trial. Appellant has eighteen criminal convictions within the last ten years. Appellant also showed a pattern of alcohol abuse that was related to the offense.
Under R.C. 2929.14(C), a trial court may impose the maximum sentence upon an offender for a felony if the offender committed the worst form of the offense or poses the greatest likelihood of committing future crimes. In this case, the trial court found appellant met the criteria of both categories. The record supports appellant's sentence and it is in accordance with requirements set forth in the Revised Code. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING APPELLANT'S REQUEST FOR A MISTRIAL.
Appellant's second assignment of error claims that the trial court erred by overruling appellant's motion for a mistrial. At trial, appellant's counsel moved the court to declare a mistrial when the state asked McCullough the following question on cross-examination:
 STATE: One moment. After the robbery . . . talking about the period of August 16 to September 4 . . . that time frame . . . do you remember telling a Fuel Mart employee that you thought that Steve [appellant] committed the robbery and that's why he left town?
McCullough: No.
Appellant argues that the question was so prejudicial that it jeopardized his right to a fair trial. Appellant further contends that the state had no factual basis to ask McCullough if she made such a statement. Appellant believes that the state asked this question "simply to plant in the minds of the jury" that McCullough knew or thought appellant committed the robbery.
The granting or denying of a mistrial rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,182. Further, the trial court has broad discretion in determining whether to admit or exclude evidence, id., and that broad discretion extends to controlling the scope of cross-examination. O'Brien v. Langley (1980), 63 Ohio St.2d 159,163. "An appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material prejudice." Sage, 31 Ohio St.3d at 182.
Evid.R. 611 permits cross-examination on "all relevant matters and matters affecting credibility." The credibility of a witness can be impeached by examining a witness about an oral or written statement the witness made prior to trial that is inconsistent with his or her trial testimony. Evid.R. 613(A). Use of prior inconsistent statements to impeach credibility is not based on the theory that the present testimony is false and the prior statement is true, but rather upon the notion that the inconsistency raises doubts about the truthfulness of both statements, calling into question the believability of the witness. McCormick, Evidence (5ed. 1999) 126, Section 34. Generally, the cross-examiner "must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact." Evid.R. 607(B). Therefore, when credibility is tested through prior inconsistent statements, the only requirement is that the examiner has a good faith belief that the statements were made by the witness. See State v.Gillard (1988), 40 Ohio St.3d 226, paragraph two of the syllabus, overruled on other grounds, State v. McGuire (1997), 80 Ohio St.3d 390.
There is no evidence in the record that the prosecutor lacked a good faith belief that McCullough made the prior inconsistent statement to the employee at Fuel Mart. In fact, the prosecutor stated at trial that this prior statement formed the basis of an anonymous tip to Officer Queen that resulted in the investigation of appellant as the perpetrator. The state's assertion is consistent with the record of Officer Lowe's testimony at the suppression hearing held in this case. The state properly offered the question on cross-examination to impeach the credibility of McCullough. Therefore, we find that the trial court did not abuse its discretion by allowing the state to cross-examine McCullough regarding her prior inconsistent statement and that appellant did not suffer a material prejudice from the properly admitted testimonial evidence.[2] Accordingly, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE CONVICTION OF APPELLANT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
In his third assignment of error, appellant argues that his conviction is against the manifest weight of the evidence. Appellant contends that he established his defense of alibi by a preponderance of the evidence and the jury convicted an innocent man.
In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of any conflicting testimony. State v.Thompkins (1997), 78 Ohio St.3d 380, 389. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier if fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was convicted of aggravated robbery. R.C. 2911.01
sets forth the requirements to convict a person of aggravated robbery:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 (2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
 (3) Inflict, or attempt to inflict, serious physical harm on another.
R.C. 2923.11 defines "deadly weapon" in part as "any instrument, device or thing capable of inflicting death."
In this case, Boisel identified appellant without hesitation in a photo lineup as the individual who robbed him at knifepoint. Appellant held a knife that was approximately six inches in length to Boisel's neck during the commission of the offense. Appellant escaped with approximately $880.
Although appellant presented alibi witnesses, the trier of fact determines the credibility of the witnesses. See DeHass,10 Ohio St.2d 230, paragraph one of the syllabus. The robbery at Buzzy's Drive Thru occurred shortly before 9:00 p.m. and the police arrived by 8:58 p.m. McCullough testified that she saw appellant at home before she left the house around 8:40 p.m. or 8:45 p.m. and when she returned between 9:20 p.m. and 9:25 p.m. However, McCullough was not home around the time of the actual offense. Simmons testified that he knew appellant was home at 9:00 p.m. when he arrived home from a friend's house. Like McCullough, Simmons was not home during the time of the alleged offense. In addition, Simmons stated that appellant was in the bathroom from 9:00 p.m. until about 9:30 p.m. or 10:00 p.m., while McCullough testified that appellant was on the couch when she returned between 9:20 p.m. and 9:25 p.m. Moreover, appellant lives approximately one-half of a mile from Buzzy's Drive Thru and admitted at trial that he often walks to local stores. Therefore, the jury could conclude that appellant did not provide a reliable alibi.
Based upon the foregoing and a thorough review of the record, we find that the trier of fact neither lost its way nor created a manifest miscarriage of justice by finding appellant guilty of aggravated assault. Appellant's conviction is not against the manifest weight of the evidence. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] Edmonson concerned R.C. 2929.14(B), which governs when a trial court may sentence an offender to a sentence greater than the minimum but less than the maximum allowable term of imprisonment. In that case, the Supreme Court held that R.C.2929.14(B) did not require a trial court to state the reasons underlying its findings supporting the sentence, id. at syllabus, because "had the General Assembly intended the R.C. 2929.14(B) findings to include reasons, it would have explicitly expressed that intent as it did in R.C. 2929.19(B)(2)." Id. at 326. Like R.C. 2929.14(B), R.C. 2929.14(C) does not include a requirement that the trial court state the reasons for its findings. Thus, the reasoning underlying the Edmonson syllabus is applicable to R.C. 2929.14(C).
[2] Appellant asks this court to consider the significance of the fact that appellant's first trial in this case resulted in a hung jury and, in that case, the state did not cross-examine McCullough on this prior inconsistent statement. Since we conclude that the question is proper under the Rules of Evidence, we decline appellant's invitation to speculate about its effect on the outcome of this trial.