OPINION
Defendant-appellant, Larry E. Moss, appeals from a judgment of the Franklin County Court of Common Pleas finding defendant guilty on eight counts of a nine-count indictment. Because the trial court did not commit reversible error, we affirm.
On January 20, 2000, a grand jury indictment was filed in the Franklin County Court of Common Pleas charging defendant with nine felony counts. The indictment stemmed from two different January 10, 2000 incidents. The first occurred when defendant knocked on the door of a home at 1511 East Fulton Avenue at around 7:30 p.m. Shortly thereafter, defendant pulled a gun from concealment and swung at one of the occupants. Although defendant was removed from the home, he subsequently fired three shots into the house. One of the bullets struck an occupant's abdomen.
The second incident occurred at Janory Temporary Service ("JTS") when defendant entered the office at approximately 9:00 p.m. and displayed a firearm. Defendant pointed the weapon at several employees and ordered the night manager to print two checks payable to Larry Moss.
Pursuant to a jury trial, defendant was found guilty of eight counts in the indictment: one count of aggravated robbery in violation of R.C.2911.01, two counts of robbery in violation of R.C. 2911.02, one count of kidnapping in violation of R.C. 2905.01, one count of aggravated burglary in violation of R.C. 2911.11, two counts of felonious assault in violation of R.C. 2903.11, all with firearm specifications, and one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161. The trial court sentenced defendant accordingly, and defendant appeals, assigning the following errors:
 I. THE COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FAILING TO PROPERLY CONSIDER DEFENDANT-APPELLANT'S MOTION TO SUPPRESS STATEMENTS AND TO EXCLUDE STATEMENTS MADE BY DEFENDANT-APPELLANT.
 II. THE COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY REPEATEDLY PERMITTING THE STATE TO ASK LEADING QUESTIONS ON ESSENTIAL ELEMENTS OF THE STATE'S CASE.
 III. THE COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY A COURSE OF CONDUCT INDICATING PREFERENCE TO THE POSITION OF THE STATE OF OHIO.
Defendant's first assignment of error contends the trial court erred in failing to properly consider defendant's motion to suppress. Procedurally, defendant argues the trial court failed to hold a proper evidentiary hearing and improperly shifted the burden of proof. Substantively, defendant argues the statements he gave to the police was involuntary, and therefore in violation of the Fifth Amendment to the United States Constitution.
Pursuant to Crim.R. 12(E), a trial court is required to conduct an evidentiary hearing on a motion to suppress evidence "only where the claims in the suppression motion would justify relief, and where those claims are supported by factual allegations." City of Solon v. Mallion (1983), 10 Ohio App.3d 130, 132. If true, defendant's contention that his statements to police during a custodial interrogation violated theFifth Amendment to the United States Constitution would justify relief. Similarly, defendant asserted facts with sufficient particularity to support the claim for relief. Specifically, defendant contended the statements were the result of a custodial interrogation, and asserted circumstances which raised an issue about the voluntariness, and thus the admissibility, of his statements. As a result, an evidentiary hearing was appropriate.
On the day of trial, the trial court considered defendant's motion to suppress. No live testimony was taken; rather, the only evidence offered was defendant's videotaped confession that all of the parties, including the court, had viewed in open court on a previous occasion. Because all of the relevant arguments of defendant's motion centered on whether defendant voluntarily waived his rights, the only necessary evidence not only was before the trial court, but viewed by the court. Moreover, simply because, without objection, the court asked defense counsel to speak regarding the motion, does not indicate the trial court shifted the burden of proof, especially in the relaxed posture created by the absence of live testimony. Finally, even if the court erred by shifting the burden of proof, this court can correct any resulting error, given the uncontested evidence in the form of defendant's videotaped confession. Accordingly, defendant received an adequate hearing.
Substantively, defendant contends the trial court erred in finding defendant's statements to the police were admissible. Specifically, defendant asserts he did not waive his right to remain silent, his will was overborne, and his statements were not the product of a free and voluntary waiver. Typically, an appeal from a trial court's decision on a motion to suppress presents a mixed question of law and fact. State v. Fisher (Oct. 17, 2000), Franklin App. No. 99AP-1497, unreported, citing State v. Long (1998), 127 Ohio App.3d 328, 332. The question of fact arises because the trial court, during an evidentiary hearing on a motion to suppress, acts as the trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. Id., citing State v. Brooks (1996), 75 Ohio St.3d 148, 154. Thus, an appellate court will defer to the trial court's factual conclusions. The question of law arises when an appellate court determines whether the trial court reached the correct legal conclusion in applying the facts of the case. Id., citing State v. Venham (1994), 96 Ohio App.3d 649, 653.
According to the videotape, defendant was read his rights under Miranda v. Arizona (1966), 384 U.S. 436, and defendant acknowledged he understood them. At that time, defendant was asked if he wished to make a statement to the police, and defendant responded in the negative, indicating it would be in his best interest not to speak. "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Miranda, supra, at 473-474. Defendant exercised his right to remain silent by stating he did not wish to make a statement, and by adding it would be best if he did not say anything. The police thus were required to immediately halt the interrogation.
Indeed, the police halted the custodial interrogation: after defendant exercised his right to remain silent, the police did not initiate any further communication. Mere seconds after defendant exercised his right to remain silent, however, he made an incriminating statements concerning the subject matter of the investigation. The police responded to defendant's statements with a question, which defendant answered. The police then continued to question defendant, and defendant answered all of the questions.
Statements obtained after a defendant invokes the right to remain silent are not per se inadmissible; their admissibility depends on whether the defendant's right to cut off questioning was scrupulously honored. Michigan v. Mosley (1975), 423 U.S. 96, 104; State v. Davie (1997), 80 Ohio St.3d 311, 320. A suspect's rights are scrupulously honored when "new and adequate warnings are given and there is a reasonable basis for inferring that the suspect has voluntarily" waived his rights. State v. Wilkerson (Dec. 31, 1980), Franklin App. No. 80AP-295, unreported, citing Hill v. Whealon (C.A.6, 1974), 490 F.2d 629, citing U.S. v. Collins (C.A.2, 1972), 462 F.2d 792. See, also, Williams v. Ohio (C.A.6, 1976), 547 F.2d 40.
In Wilkerson, Whealon, Williams, and Collins, the defendants were re-mirandized after a significant delay. Here defendant initiated further communication with the interrogating officer on the heels of being mirandized. In fact, the videotaped statements indicates that in less than thirty seconds defendant was read his rights, defendant acknowledged his rights, stated that he understood his rights, exercised his rights, and then initiated further communication with the officer.
Re-mirandizing a suspect is done to remind the suspect, during the subsequent interrogation, that he or she is under no obligation to speak. See, generally, Mosley, supra. Those justifications fail to serve any purpose when, as here, the interrogating officer did not attempt to communicate with defendant in the extraordinarily brief interval between his initial refusal to speak and his subsequent statements. Finally, although the court in Mosley warned about the dangers of allowing an interrogation to resume after only a "momentary respite," in reaching that conclusion the court was not referring to interrogation prompted by a conversation a defendant initiated. Id. at 102.
The second issue under Wilkerson is whether there was a reasonable basis for the interrogating officer to infer that defendant voluntarily waived his rights. Wilkerson, supra. Although a suspects signature on a "waiver of rights" form is preferable, waiver, "in at least in some cases, can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler (1979), 441 U.S. 369, 373. Defendant's actions and words here arguably provided such circumstances.
After being mirandized, defendant not only acknowledged that he understood his rights but that he was familiar with them from a previous occasion. In addition, defendant in fact exercised his right to remain silent and questioning immediately ceased. However, within seconds of exercising his right to remain silent, defendant initiated further communication with the police on the subject matter of the arrest. See Davie, supra, at 320 (holding that waiver of right to remain silent can be inferred when suspect "initiates" conversation with interrogating officer), citing Edward v. Arizona (1981), 451 U.S. 477, 495. Under those facts, the interrogating officer reasonably could conclude that an informed defendant had changed his mind and decided to waive his rights. Because defendant's right to remain silent was scrupulously honored, his statements arguably were admissible.
Even if the confession was improperly admitted, defendant suffered no prejudicial error in light of the other evidence in the case. See Harrington v. California (1974), 395 U.S. 250 (finding no reversible error in constitutional violation where error was harmless beyond a reasonable doubt). Here, defendant's conviction was supported by overwhelming evidence. Defendant's initial statement to the police, that he did not intend to kill anyone, was not only admissible but incriminating. Moreover, as to the conviction for shooting into a habitation, defendant was well known to the occupants of the house and well identified concerning his underlying actions culminating in the offense. As to the remaining convictions arising from defendant's actions at JTS, at least two of JTS' employees, who had known defendant before the evening of the incidents, testified to the events and positively identified defendant.
Defendant offered no evidence to counter the strong eyewitness testimony the state offered. While the trial was not flawless, as noted in the discussion of the subsequent assignments of error, the evidence nonetheless was so overwhelming that any error in admitting defendant's full confession was harmless beyond a reasonable doubt. Defendant's first assignment of error is overruled.
Defendant's second assignment of error contends the trial court erred in repeatedly allowing the state to ask leading questions of its own witnesses on matters that related to essential elements of the state's case. Defendant points to Evid.R. 611(C) for the general proposition that leading questions should not be used on direct. A trial court's decision to allow leading questions on direct is reviewed under an abuse of discretion standard. Ramage v. Central Ohio Emergency Services, Inc. (1992), 64 Ohio St.3d 97, paragraph six of the syllabus.
Defendant's assigned error relates to the testimony of three of the state's witnesses. The first witness was David Anthony Vaughn, who testified defendant and he were co-workers at JTS. On the night of January 10, 2000, Vaughn arrived at work to observe defendant with a firearm. Defendant pointed the gun at a fellow employee, and at one point, Vaughn testified he was no more than two to three feet from defendant.
Nonetheless, when Vaughn was asked if the person he knew as Larry Moss was in the courtroom, Vaughn did not point to defendant. The prosecution then asked the witness to have a look at "the gentleman here at this table." (Tr. Vol. III, 105.) Defense counsel objected without stating the ground for the objection. The trial court overruled the objection, stating that the witness' failure to correctly identify defendant went to the weight of the evidence, not its admissibility. Vaughn then identified defendant.
Even if the trial court abused its discretion in permitting the witness to answer, defendant suffered no measurable prejudice. In addition to Vaughn, the state produced testimony from two other JTS employees, Larry Runyan and Jeffrey Miller. Runyan, the night manager at JTS, testified he had contact with defendant on three separate occasions on January 10, 2000. During the final encounter, defendant pulled out a firearm and ordered Runyan to produce checks payable to defendant. At trial, Runyan positively identified defendant as the perpetrator.
Similarly, Miller testified he had known defendant for approximately one and a half months to the incident at JTS. When Miller arrived at work on January 10, 2000, defendant was in the JTS office and had a firearm in his possession. Defendant pointed the firearm at Miller's head and warned Miller not to do anything stupid. Miller, too, identified defendant in the courtroom. Given the additional testimony the state produced on the identification issue, defendant was not substantially prejudiced by Vaughn's testimony.
The state's second witness was Angeline Cobb. The prosecution asked Cobb a leading question, and defense counsel objected. The trial court overruled the objection, but then instructed the prosecution to "[r]ephrase that question. I don't know whether it was leading or asking for a double hearsay or a little of each." (Tr. Vol. V, 444.) The trial court did not exceed the bounds of its discretion by so ordering.
The third witness for the state was Sergeant David Griffith. Griffith interrogated defendant the night he was arrested, read defendant his rights, and then asked defendant if he would like to make a statement, which defendant declined. The prosecution then asked Griffith leading questions about defendant's subsequently initiating further conversation with Griffith. Defense counsel objected and the trial court overruled the objection. Griffith testified defendant voluntarily initiated further communication.
The issue of whether defendant initiated further communication is a question of law that bears on the admissibility of the statements made by defendant, an issue the trial court had resolved. While the testimony may have been irrelevant, it was not prejudicial, given that the tape of the police mirandizing defendant and defendant's subsequent statements were before the jury. Accordingly, defendant's second assignment of error is overruled.
Defendant's third assignment of error contends the trial court erred in systematically indicating a preference for the state. Defendant initially contends the trial court erred by ordering defendant to wear leg-irons in the presence of the jury, and then compounded the error by informing the jury that the leg-irons were for "security," leaving the jury with the unmistakable impression that defendant was a threat to their safety.
Generally, a defendant should not be shackled during a jury trial absent unusual circumstances. State v. Kidder (1987), 32 Ohio St.3d 279,285. Nonetheless, a prisoner may be shackled when such precaution is necessary to prevent violence or escape. State v. Woodards (1966),6 Ohio St.2d 14, 23. The decision to restrain a defendant is within the sound discretion of the trial court. Id; State v. Richey (1992),64 Ohio St.3d 353, 358, overruled on other grounds, State v. McGuire (1997), 80 Ohio St.3d 390.
On the day of trial, the trial court stated out of the presence of the jury that defendant had to remain in leg-irons for the safety of the court, as defendant had threatened to kill or assault people, including the "deputies many times." (Tr. Vol. II, 2-3.) The trial court, however, further indicated it would instruct the jury they could not draw any inference from the leg-irons. Defense counsel objected for the record. Because nothing in the record suggests the trial court's recitation of defendant's threats was erroneous, the trial court did not abuse its discretion in ordering defendant to remain in leg-irons. See Richey, supra.
Defendant also asserts that the trial court's instructions to the jury concerning the leg-irons were erroneous, as it suggested defendant was dangerous. As defendant contends, the trial court instructed the jurors that the leg-irons were simply a security matter. However, the trial court also instructed the jurors that they were not permitted to draw any inference from the leg-irons. A jury is presumed to follow a trial court's instructions. State v. Jones (2000), 90 Ohio St.3d 403, 414. Moreover, even if it was error for the court to comment as it did on the leg-irons, in order to prevail defendant must show prejudice. Given the overwhelming amount of evidence against defendant, including his videotaped confession, eyewitness identification by co-workers and other associates, and the recovery of defendant's gun, defendant has failed to demonstrate prejudice.
Defendant next contends the trial court erred in commenting favorably on the testimony of one of the state's witnesses. The cross-examination of Officer James Sheehan revealed he was testifying for the first time. At the conclusion of Sheehan's testimony, the trial court told him "[y]ou did great for your first time testifying." (Tr. Vol. IV, 280.)
The trial court erred in commenting favorably on Sheehan's testimony. Defendant, however, did not object to the court's comments. Failure to object constitutes waiver of the error, as the trial court was denied the opportunity to give curative instructions. State v. Penton (Apr. 7, 1993), Marion App. No. 9-91-25, unreported, citing State v. Wade (1978),53 Ohio St.2d 182, 188, vacated in part, Wade v. Ohio (1978), 438 U.S. 911. Absent an objection, we reverse only for plain error. State v. Anan (1986), 22 Ohio St.3d 120, 122. Given the evidence the state presented, the record does not support plain error, as the outcome of the trial would not clearly have been different in the absence of the trial court's comment. See State v. Long (1978), 53 Ohio St.2d 91. Moreover, while it was not a curative instruction, the trial court advised the jury that "if during the course of this trial, the court has said or done anything that you considered to be the court's view on the facts, you're instructed to disregard whatever it may be." (Tr. Vol. V, 647.)
Defendant next contends the trial court erred in allowing the state to publish photographs to the jury. Defendant did not object, thus waiving all but plain error. On appeal, defendant does not explain why the court's allowing the witness to publish the photographs to the jury is erroneous, much less prejudicial.
Defendant also asserts the trial court erred in engaging in "banter" with defense counsel that undermined counsel's credibility. On one occasion defense counsel requested permission to approach one of the state's witnesses and the trial court replied, "[s]ure as long as you don't badger the witness. You wouldn't do that, would you?" (Tr. Vol. IV, 302.) In a separate instance, defense counsel requested permission to stand in a certain place and the court responded "[s]ure as long as you behave yourself." (Tr. Vol. V, 518.)
Defendant did not object to the statements made by the trial court, and not only waived all but plain error, but also denied the trial court an opportunity to give a curative instruction. Penton, supra. Moreover, good natured banter between the court and trial counsel does not indicate bias on the part of the trial judge. State v. Girts (1997), 121 Ohio App.3d 539. To the extent the comments were good natured, the trial court did not err. To the extent the trial court's comments go beyond good-natured banter to reflect badly on defense counsel, they do not rise to the level of plain error.
Defendant also contends the trial court erred in allowing the state to use, in connection with the testimony of a medic, a report not made available to defendant through discovery. Defense counsel repeatedly objected to the line of questioning. The trial court ultimately concluded that the objection was proper. The trial court also determined defendant was not prejudiced despite defendant's not having an opportunity to review the report.
According to the record, the state handed the witness the report and asked a series of procedural questions, including questions that addressed the method by which the medic arrived on the scene, and the duties with which the medic was charged. Defendant objected to the first substantive question, which asked the medic what he observed upon entering the house. Defendant contended the witness was simply reading his report. At that time the state offered to retrieve the report from the witness. The remainder of the medic's testimony was completed without the report. Under those circumstances, the trial court correctly concluded defendant was not prejudiced by not having an opportunity to view the report, as the evidence read from the report was relatively insignificant. Moreover, while on this record we are unable to determine to what extent the witness's memory was refreshed by the report and thus affected his testimony, any adverse effect on defendant does not rise to the level of prejudicial error in light of the other evidence the state presented.
Defendant lastly contends the trial court erred in allowing Mark Hardy, a witness for the state, to testify as an expert without first being qualified as an expert. The admissibility of expert testimony is within the trial court's discretion and will not be reversed absent an abuse of discretion. Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607,616.
Although the state never tendered the witness to the court as an expert, the state elicited all relevant information concerning the witness's experience, training and ability. When the state asked the witness to offer his opinion, defense counsel objected on the ground that the witness had not been qualified as an expert. While the trial court did not explicitly find the witness to be an expert, the information elicited by the prosecution demonstrated the witness was so qualified. The court did not err in allowing the witness to render an expert opinion.
Finally, defendant contends that even if the individual errors discussed within his third assignment of error are not sufficient to merit a reversal, the combined effect prejudiced defendant. Contrary to defendant's contentions, the evidence against the defendant was overwhelming and the trial court's errors did not cumulatively deny defendant a fair trial. Defendant's third assignment of error is overruled.
Having overruled defendant's three assignments of error, we affirm the judgment of the trial court.
 _______________ BRYANT, P.J.
DESHLER and BOWMAN, JJ., concur.