O’Donnell, J.,
dissenting.
{¶ 136} Respectfully, I dissent.
{¶ 137} This case concerns the trial strategy developed by Herring’s defense counsel to present only positive mitigation evidence, which included Herring’s mother and sister asking the jury to spare his life. In my view, Herring has failed to rebut the presumption that counsel performed competently and has not shown a reasonable probability that but for counsel’s failure to inquire further into the existence of other mitigating evidence, the outcome of the proceeding would have been different.
*197 Review of Ineffective Assistance of Counsel Claims
{¶ 138} As the Supreme Court explained in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), “[a] convicted defendant’s claim that counsel’s assistance was so defective as to require reversal of a conviction or death sentence has two components.” First, the accused must overcome “a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance,” id. at 689, and demonstrate that counsel’s performance was deficient, i.e., that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Id. at 687. Second, the accused bears the burden of proving that the specified errors resulted in prejudice by showing “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694.
{¶ 139} “[SJcrutiny of counsel’s performance must be highly deferential,” id. at 689, and the court has recognized that “[sjurmounting Strickland’s high bar is never an easy task,” Padilla v. Kentucky, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). Importantly, this case concerns the trial court’s denial of a petition for postconviction relief, which “should be upheld absent an abuse of discretion.” State v. Gondor, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. “ ‘The term “abuse of discretion” * * * implies that the court’s attitude is unreasonable, arbitrary or unconscionable.’ ” State v. White, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 46, quoting State v. Adams, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Thus, our review here is “doubly deferential.” See Knowles v. Mirzayance, 556 U.S. Ill, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (review of ineffective assistance claim in federal habeas action is “doubly deferential”).
Deficient Performance
{¶ 140} As the Supreme Court explained in Wiggins v. Smith, 539 U.S. 510, 527, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), “In assessing the reasonableness of an attorney’s investigation, * * * a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.” Thus, Herring bore the burden to demonstrate that his defense attorneys were on notice of the need to inquire further. He has not, however, met this burden.
{¶ 141} Herring’s defense attorneys, Gary Van Brocklin and Thomas Zena, hired Thomas Hrdy, a mitigation specialist, to conduct an investigation seeking to uncover potential mitigating evidence. However, Hrdy produced little information, and he subsequently admitted that he “did a substandard job of mitigation investigation.” He also asserted that he lacked enough time to complete the investigation, but both defense attorneys dispute that claim. There is no proof *198 that defense counsel had any indication at the time of trial that Hrdy performed an inadequate investigation into possible mitigating evidence. Hrdy’s affidavit makes no such claim, and defense counsel both testified that they had no notice that the investigation was inadequate. Van Brocklin testified that he “believed at the time that [Hrdy] had done all of the work necessary to look into Mr. Herring’s background” and that Hrdy never alerted defense counsel that “he in any way fell short of the mark.” Notably, Hrdy told counsel, “This has been a most difficult case to find mitigation on as you well know,” which would reasonably have caused defense counsel to believe that an adequate investigation had been completed.
{¶ 142} Nor did Hrdy’s billing statement “put counsel on notice that Hrdy’s investigation had been incomplete,” majority opinion at ¶ 98, because, as the majority acknowledges, it is unclear when trial counsel received Hrdy’s bill. Moreover, the details in the billing statement may have simply confirmed defense counsel’s belief that Hrdy had located nothing in Herring’s past that the jury panel would have found mitigating.
{¶ 143} And even if trial counsel should have known that Hrdy’s investigation was inadequate, there is no proof that a more in-depth investigation would have disclosed anything counsel did not already know. Van Brocklin testified that he arid Zena “knew a lot of negative information” about Herring “through our own investigation and through criminal records and those kinds of things that were supplied to us during the lengthy discovery process.” Thus, contrary to the majority’s conclusion, there is no indication that counsel did not in fact “review Herring’s [Department of Youth Services] records and other records that would have provided information about his dysfunctional background,” majority opinion at ¶ 89, nor does the record show that defense counsel at the time of trial were not aware of Herring’s “parental neglect, gang involvement, or life as a drug dealer,” id. at ¶ 71.
{¶ 144} Rather, the record contains “a handful of post-hoc nondenials” by his lawyers, Cullen v. Pinholster, — U.S.-, 131 S.Ct. 1388, 1406, 179 L.Ed.2d 557 (2011), who could not specifically recall what they had known about Herring’s background. In assuming that because counsel could not remember the scope of the investigation, one must not have been conducted, the majority ignores the presumption that counsel had performed professionally and fails to recognize that, as Zena testified, defense counsel in this case strove to put “the best foot forward to save [Herring].”
{¶ 145} Similarly, Herring asserts that trial counsel were deficient because they failed to evaluate the psychological, developmental, and intellectual factors in Herring’s background; he relies on a letter from Dr. Douglas Darnall indicating that he had administered only the MMPI-2 to Herring and suggesting that *199 Herring may have “a delusional disorder.” But Dr. Darnall’s letter reports that counsel had asked only for the MMPI-2 to be administered, and nothing in this letter indicates that this was the only assessment that Dr. Darnall or any other expert conducted. And trial counsel lacked any independent memory of what steps they took to evaluate Herring’s mental state. Their case files — which would establish whether or not defense counsel had conducted a reasonable investigation — were apparently lost by his appellate attorneys in the public defender’s office.
{¶ 146} Thus, nothing in this record indicates that defense counsel violated the “duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674. Herring has therefore not rebutted the strong presumption in favor of the adequacy of trial counsel’s representation, nor has he shown that any of the claimed errors are anything more than “a disagreement over trial strategy.” State v. Brown, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 53.
{¶ 147} As we have consistently explained, “[debatable trial tactics generally do not constitute a deprivation of effective counsel.” State v. Lang, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 192, citing State v. Phillips, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995); State v. Clayton, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980) (“Counsel chose a strategy that proved ineffective, but the fact that there was another and better strategy available does not amount to a breach of an essential duty to his client”).
{¶ 148} Counsel’s tactics in this case were not manifestly outside the bounds of reasonable trial strategy. Defense counsel based the decision to present positive information on the composition of the particular jury panel, which they viewed as likely to impose the death sentence on Herring. Van Brocklin explained that negative information that “Herring had been involved in a life of crime would simply [have been] more ammunition for them to find a death verdict.” And Zena believed that putting on negative mitigation evidence would have served only to “bury him further.” Thus, as the Supreme Court noted in Cullen v. Pinholster, — U.S.-, 131 S.Ct. at 1407, 179 L.Ed.2d 557, “it certainly can be reasonable for attorneys to conclude that creating sympathy for the defendant’s family is a better idea because the defendant himself is simply unsympathetic.” (Emphasis sic.)
{¶ 149} Trial strategy is the province of defense counsel, not mitigation specialists. It is the accused’s attorneys who are charged with the responsibility to develop the trial strategy in an effort to present the best case on behalf of the defendant; they bear the ultimate responsibility for defending the accused at trial. And this is true even if a mitigation specialist asserts, after the fact, that *200 he failed to do his job in conducting the investigation to discover mitigating evidence. There is no constitutional right to the effective assistance of a mitigation specialist, only a right to the effective assistance of counsel. See Moore v. Mitchell, 708 F.3d 760, 777 (6th Cir.2013); State v. McGuire, 80 Ohio St.3d 390, 399, 686 N.E.2d 1112 (1997). And because Herring has failed to prove that his trial attorneys performed deficiently, the trial court did not abuse its discretion in finding that counsel had provided a competent defense.
Prejudice
{¶ 150} Even assuming that counsel’s conduct fell outside the range of reasonable professional assistance, Herring still carries the burden to establish prejudice. “In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence,” Wiggins, 539 U.S. at 534, 123 S.Ct. 2527, 156 L.Ed.2d 471, and “it is necessary to consider all the relevant evidence that the jury would have had before it if [trial counsel] had pursued the different path — not just the mitigation evidence [trial counsel] could have presented, but also [the other evidence] that almost certainly would have come in with it.” (Emphasis sic.) Wong v. Belmontes, 558 U.S. 15, 20, 130 S.Ct. 383, 175 L.Ed.2d 328 (2009). Thus, Herring “must show a reasonable probability that the jury would have rejected a capital sentence after it weighed the entire body of mitigating evidence (including the additional testimony [trial counsel] could have presented) against the entire body of aggravating evidence.” Id.
{¶ 151} Here, in my view, the appellate court committed reversible error by failing to reweigh all the relevant evidence before it concluded that Herring had been prejudiced by trial counsel’s errors. The court noted that the undiscovered mitigating evidence “ ‘ “might well have influenced the jury’s appraisal” ’ ” of Herring’s culpability and that “the probability of a different sentence if counsel had presented the evidence is ‘ “sufficient to undermine confidence in the outcome.” ’ ” 7th Dist. Mahoning No. 08-MA-213, 2011-Ohio-662, 2011 WL 497765, ¶ 90, quoting Rompilla v. Beard, 545 U.S. 374, 393, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), quoting Williams v. Taylor, 529 U.S. 362, 398, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), and Strickland, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. Yet the court made no attempt to balance the mitigating factors against the aggravating circumstances as required by Wiggins and Belmontes before reaching that conclusion.
{¶ 152} Instead, the appellate court considered only the mitigating evidence that it determined counsel should have discovered and presented during mitigation, including details about Herring’s dysfunctional childhood and family life, alcohol and drug abuse, gang involvement, mental-health problems, and possible brain impairment, taking the extraordinary step of setting aside Herring’s death sentence and ordering a new mitigation hearing because this evidence was not *201 presented during trial — without first determining whether the submission of this evidence would have made any difference when weighed against other evidence in the case.
{¶ 153} In my view, weighing the aggravating circumstance for each of the three murder counts against the mitigating evidence that Herring asserts counsel should have discovered demonstrates that any error did not affect the outcome of the proceeding. The jury found Herring guilty of three death-penalty specifications for a course of conduct involving the purposeful killing of or attempt to kill two or more persons. State v. Herring, 94 Ohio St.3d 246, 252, 762 N.E.2d 940 (2002). As we explained in the independent sentence review we conducted on direct appeal, sufficient evidence proved Herring’s intentional participation in three murders and two attempted murders during a planned robbery of a Youngstown bar. The manner in which the robbery was committed showed that each of the robbers, including Herring, intended to kill all of the victims, and “[t]he coordination displayed here belies the notion that the killings were merely impulsive acts by individual members of the gang.” Id. at 266. We also noted Herring’s greater culpability as the ringleader of the group: “It was at [Herring’s] house that the robbers assembled, and he initiated the discussion of the robbery. Herring was the only robber prepared with a mask. He also obtained the guns (except Foose’s), and he decided who would carry which gun.” Id. And not only did the evidence show that Herring was the leader of the group, but also the state presented ballistic evidence showing that Herring murdered Jimmie Lee Jones in addition to attempting to murder Deborah Aziz and Ronald Marinelli during the course of a robbery that also resulted in the killings of Herman Naze Sr. and Dennis Kotheimer. Id. at 247, 268.
{¶ 154} As for mitigation, trial counsel made a conscious, informed decision to present “positive information” to the jury and “hammered home in argument * * * that Mr. Herring had not been convicted as a principal offender in this matter.” Counsel argued persuasively on Herring’s behalf, emphasizing that his accomplices did not receive the death penalty. Herring’s mother and his older sister provided testimony about his loving relationship with his family and urged the jury to spare his life. And trial counsel asked the jury to consider Herring’s youth, because he was only 18 years old at time of the murders. Id. at 267. This is a reasonable approach given the disadvantages of opening Herring’s background for the jury’s consideration.
{¶ 155} The additional evidence relating to Herring’s dysfunctional family background, his drug abuse, and his gang involvement is by no means “clearly mitigating.” In Cullen v. Pinholster, — U.S. -, 131 S.Ct. at 1410, 179 L.Ed.2d 557, the Supreme Court reviewed an ineffective assistance of counsel *202 claim asserting that Pinholster had been prejudiced by his trial counsel’s failure to adequately investigate and present mitigating evidence “relating to Pinholster’s family — their more serious substance abuse, mental illness, and criminal problems” — as well as new evidence of Pinholster’s drug dependency, possible brain damage, and parental neglect; like Herring, “Pinholster was mostly unsupervised and ‘didn’t get much love.’ ” Id. But the court concluded that this evidence was “by no means clearly mitigating, as the jury might have concluded that Pinholster was simply beyond rehabilitation.” Id. And the court noted that negative mitigating evidence can be a “ ‘two-edged sword’ ” that might convince a jury of the accused’s future dangerousness. Id., quoting Atkins v. Virginia, 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).
{¶ 156} The additional evidence that would have been presented on behalf of Herring involved his history of violence and gang involvement, drug abuse and drug trafficking, and other criminal behavior that he glorified as “the family business.” In my view, this evidence is not mitigating and might have caused the jury to conclude that Herring was beyond rehabilitation. Had counsel attempted to explain Herring’s behavior and humanize him with this evidence, the jury would likely have also learned of his extensive criminal past, including his commitment to DYS for shooting another person while in eighth grade, various aggravated robberies, and a life of gang involvement and drug trafficking. See State v. Herring, 7th Dist. Mahoning No. 03-MA-12, 2004-Ohio-5357, 2004 WL 2334325, ¶ 103.
{¶ 157} Nor has Herring established any prejudice from counsel’s failure to have him evaluated for a delusional disorder, an organic brain impairment, or any other mental disorder. There is no evidence that Herring suffers from these conditions. Dr. Jolie Brams offered evidence in support of Herring’s petition for postconviction relief, but had she testified at trial, she could have informed the jury only that Herring had a learning disability, substance abuse problems, and “reasonable anxiety and depression,” none of which would have proven that Herring had an impaired ability to appreciate the criminality of his conduct.
{¶ 158} In the last analysis, I see no reasonable probability that the jury would have returned a different verdict had this additional evidence been presented to it. Defense counsel recognized that this was “an awful case as cases go. * * * This was mayhem in a bar where people wound up dead, people wound up shot, bullets all over the floor,” and the victims were innocent bystanders who were not “involved in any transgressions with any of the individuals who came in.”
{¶ 159} Accordingly, because Herring has not shown that defense counsel provided ineffective assistance, the trial court did not abuse its discretion in denying the petition for postconviction relief. I would therefore reverse the judgment of the court of appeals and reinstate the sentence as imposed on *203 Herring by the trial court in accordance with the recommendation of the jurors who heard the evidence in the case.
Paul J. Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera, Assistant Prosecuting Attorney, for appellant.
Timothy Young, Ohio Public Defender, and Kimberly S. Rigby and Elizabeth Arrick, Assistant Public Defenders; and Andrea D. Lyon, for appellee.
Lanzinger and Kennedy, JJ., concur in the foregoing opinion.