[Cite as *State v. Lanier*, 2019-Ohio-3213.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                        Court of Appeals No. L-18-1119

     Appellee                                        Trial Court No. CR0201702625

v.

Leonard Lanier                                    **DECISION AND JUDGMENT**

     Appellant                                        Decided:  August 9, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Leonard Lanier, appeals from the June 15, 2018 nunc pro tunc

judgment entry convicting him of assault on a corrections officer, a violation of R.C.

2903.13, a third-degree felony, and sentencing him to 30 months in prison.  For the

reasons which follow, we affirm. On appeal, appellant asserts the following assignments of error:

Assignment of Error One: The guilty verdict was against the manifest weight of the evidence.

Assignment of Error Two: The trial court erred, to appellant's prejudice, in refusing to permit impeachment of a testifying officer.

Assignment of Error Three: The trial court abused its discretion in ordering appellant to pay the costs of appointed counsel, confinement and supervision.

## Manifest Weight of the Evidence

{¶ 2} In his first assignment of error, appellant argues that the verdict was contrary to the manifest weight of the evidence. A challenge to the weight of the evidence questions whether the greater amount of credible evidence was admitted to support the conviction than not. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19; *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 678 N.E.2d 541 (1997). In weighing the evidence, the court of appeals must give every reasonable presumption in favor of sustaining the verdict and judgment. *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3 (citation omitted). Furthermore, in making this determination, the court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, and considers the credibility of witnesses. *State v. Smith*, 80 Ohio St.3d 89, 114, 684 N.E. 2d 668 (1997).

2.

{¶ 3} R.C. 2903.13(A) provides "[n]o person shall knowingly cause or attempt to cause physical harm to another." R.C. 2903.13(C)(3) provides that "[i]f the offense occurs * * * on the grounds of a state correctional institution * * *, the victim of the offense is an employee of the department of rehabilitation and correction * * *, and the offense is committed by a person incarcerated in the state correctional institution * * * the assault is a felony of the third degree. R.C. 2901.22(B) defines "knowingly" as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 4} The following evidence was presented by the prosecution through the testimony of Officers Ford and Eldridge, corrections officers at the Toledo Correctional Institution, a state institution, and Lieutenant Weirich, a supervising officer.

{¶ 5} Officer Ford testified as follows. On April 11, 2017, appellant was an inmate at the institution and housed in the limited privilege housing, where inmates take scheduled turns for meals and recreation time and return to their cells when directed by a

3.

correction officer to "lock down." It was not uncommon (up to three-to-four times a week) that the daily head count would run over the scheduled time, preventing officers from moving inmates. Both Officers Ford and Eldridge testified no adjustment would be made in the schedule and the inmates knew they would not receive extra time for their scheduled release. Lieutenant Weirich testified that it was reasonable for an inmate to request additional time, but emphasized the matter was left to the discretion of the guards and an inmate had to comply with the officer's directions.

{¶ 6} Both Officers Ford and Eldridge described the procedure for dealing with an inmate who would not cooperate. Officer Ford testified the officers try to use communication skills to calm an inmate down. If the inmate cannot be controlled, both officers testified they could issue a "ticket," which would result in lost privileges or placement into more restrictive housing. Officer Ford testified she did not give appellant a ticket on the day at issue because she did not expect the situation to proceed as it had.

{¶ 7} That day, the daily headcount was delayed and appellant's group was let out of their cells seven minutes late. Neither officer recalled having a problem with appellant prior to this day. After lock down was announced, Officer Ford discovered appellant remained in a four-by-five foot corner area between a recreation cage and a mirrored one-way window used by correction officers to see the inmates.

{¶ 8} Officer Ford told appellant he had to lock down and appellant refused to comply stating he had been let out seven minutes late. Officer Ford called for assistance. While she acknowledged appellant's complaint, she told him he had to stick to the

4.

schedule because other inmates needed to be let out. Appellant continued to refuse to comply. Seventeen seconds into the encounter, Officer Ford directed appellant to put his hands on the wall, a common command used throughout the day for the officers to complete pat downs and shakedowns.

{¶ 9} Officer Eldridge testified he was about 10-15 feet away from the area when he overheard Officer Ford speaking to someone. This caught his attention because the inmates were supposed to be in lock down. He went to investigate and saw Officer Ford talking to appellant. Officer Eldridge appears on the camera footage after Officer Ford began talking to appellant.

{¶ 10} Officer Ford testified that when appellant complied with her direction to place his hands on the wall, she felt safe to approach appellant to place him in handcuffs. At the time, Officer Eldridge was behind her right shoulder and was prepared to assist her. As she placed her hands on appellant's back to feel body movement if he moved, appellant turned around and swung, striking Officer Ford on the left side of her face and knocking off her glasses and injuring her face. Officer Ford believed appellant was trying to strike Officer Eldridge. Officer Eldridge confirmed he was about two-to-three feet behind Officer Ford and also believed appellant was going to be compliant before he turned around and struck Officer Ford with a closed fist. Afterward, Officer Eldridge moved in to restrain appellant.

{¶ 11} Appellant continued to resist despite directions to stop and despite the fact that Officer Ford kept spraying him in the face with pepper spray. Additional officers

5.

came to their assistance and struggled in the corner with appellant until appellant was brought to the floor. The entire incident occurred in less than two minutes. After the incident, Officer Ford testified, the officers involved wrote up an incident report in separate locations and supervisors reviewed the camera recordings.

{¶ 12} Camera footage admitted into evidence showed Officer Ford moving through the area and stopping suddenly to talk to someone in the four-by-five foot area where the incident occurred, which was outside the range of the camera. A short time later, another officer can be seen entering into the scene on Officer Ford's left. The incident itself was outside the range of the camera and both Officer Ford and Eldridge testified they were unaware the area was out of camera range.

{¶ 13} Officer Eldridge testified that while he knew inmates could make informal complaints, he did not know how the complaints were processed. He did not believe appellant had filed a complaint against him, but he conceded appellant could have filed one. While he had prior inmate complaints filed against him, he had not been disciplined as a result and did not know any other officer who had been disciplined because of such a complaint. Officer Eldridge further testified he could have but did not recall having any contact with appellant after this incident.

{¶ 14} Appellant renewed his motion to reconsider the granting of the motion in limine which prevented the defense from questioning Officer Eldridge further about prior disciplinary actions. Appellant argued that the witness opened the door to the

6.

questioning when he stated he had never been disciplined and had no knowledge of the inmate complaint process.

{¶ 15} In support of his motion, appellant asserted that he had evidence Officer Eldridge had two disciplinary actions taken against him as a result of inmate complaints. The first document was a letter from the Ohio Department of Rehabilitation and Corrections indicating the officer's probation would be extended an additional six months because of a matter which did not involve inmates. The remaining records relate to an internal investigation of an incident subsequent to the one at issue which involved the officer's use of force against another inmate. This investigation was initiated as a result of a "documented Use of Force occurrence" pursuant to an administrative regulation. The institutional initially found the use of force was unjustified and referred the matter to a disciplinary hearing. However, the disciplinary review team concluded there was insufficient evidence to support discipline. Appellant did not present any evidence that either matter was instigated by an inmate complaint.

{¶ 16} Appellant argued that such evidence was significant to establish that Officer Eldridge had a motivation to lie and raise an inference that he had actually started the incident and appellant accidentally hit Officer Ford. The defense also relied upon the testimony of Officer Ford, which indicated that appellant did not become violent until Officer Eldridge became involved.

{¶ 17} The trial court ruled that it would allow the defense to question Officer Eldridge only regarding his knowledge of the process of handling inmate complaints

7.

versus internal investigations regarding employees in order to clarify Officer Eldridge's testimony. The trial court questioned the relevance of establishing that Officer Eldridge had not been truthful about prior reprimands when there was no evidence in the record that Officer Eldridge exceeded his authority or used excessive force. The trial court also considered the prejudicial effect on the ultimate issue of whether or not appellant assaulted Officer Ford by allowing evidence of Officer Eldridge's prior discipline to be presented.

{¶ 18} Appellant continued to cross-examine Officer Eldridge. When questioned whether there were two processes for investigations, the officer testified that he would not know. He knew there is an inmate complaint process, but he did not know what happens once a complaint is made. He denied knowing the process by which an officer could be reprimanded for violating an institution rule. He surmised that an incident report could be filed by the officer who witnessed the violation of a rule. But, he reiterated he does not participate in the process.

{¶ 19} Finally, Lieutenant Weirich confirmed that if force was used to physically take an inmate to their cell, a supervisor would prepare a use of force report after watching any video and reading the officer reports. Furthermore, an inmate could make a complaint either verbally by addressing an issue directly with an officer or by filling out a form. A written inmate complaint is sent to the institutional inspector who will respond to the complaint. The officer mentioned in the written complaint may or may not be made aware of the complaint depending upon its nature. Sometimes a supervisor merely

8.

addresses a conduct issue with an officer without indicating the matter was precipitated by an inmate complaint. The lieutenant further testified that the Ohio State Highway Patrol independently investigates crimes that occur within the correctional institution. The institution reports an assault to the highway patrol and it conducts an investigation if the institution requests one and the highway patrol institutes any criminal actions.

{¶ 20} On appeal, appellant argues that his conviction is contrary to the manifest weight of the evidence because: 1) the evidence shows Officer Eldridge "likely initiated the physical conflict by misusing force against appellant" based on the testimony of Officer Ford that the incident "didn't go as planned"; 2) there was inconsistent testimony regarding how Officer Eldridge became involved and what he did; 3) there was inconsistent testimony whether inmates could expect to have allowances for missed time; 4) appellant was not first given a ticket for his disobedience; 5) Eldridge denied knowing the institution's procedure for handling inmate complaints despite the fact that he had been disciplined for using force; 6) the video recording of the day room did not cover the incident and, therefore, infers Officer Eldridge inserted himself into the incident and provoked appellant in some manner.

{¶ 21} Upon a review of all of the evidence, we find appellant points only to conjecture, not "evidence," that a different incident occurred. There is no evidence from which a jury could reasonably infer that Officer Eldridge did something to cause appellant to strike Officer Ford. The evidence regarding appellant's complaint of missed time was not conflicting. Officer Ford explained that she did not give appellant a ticket

because she did not foresee appellant would continue to resist. There was no evidence that Officer Eldridge had ever been disciplined for the use of undue force or that he should have known the inmate complaint process. Finally, the lack of a complete surveillance footage does not give rise to an inference that Officer Eldridge instigated the incident.

{¶ 22} We find there was undisputed evidence that appellant knowingly swung and struck Officer Ford. There was no conflicting evidence regarding the material issues and even if there was any conflicting evidence, the jury must resolve the conflict. We cannot, as a reviewing court, substitute our judgment for the trier of fact who saw the witnesses testify and assessed their credibility. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. As stated above, our role on review is to determine if there is anything which indicates the jury lost its way in evaluating the evidence and drawing inferences from the direct evidence. We find that there was not. Therefore, we find that appellant's conviction was not contrary to the manifest weight of the evidence.

{¶ 23} Appellant's first assignment of error is found not well-taken.

### Impeachment Through Extrinsic Evidence

{¶ 24} In his second assignment of error, appellant argues the trial court erred by refusing to allow appellant to impeach Officer Eldridge. Prior to trial, the trial court preliminarily granted appellee's motion in limine to exclude Officer Eldridge's

10.

disciplinary records from evidence. Appellant raised the issue again during cross-examination and sought to impeach the officer with extrinsic evidence from the officer's disciplinary record.

{¶ 25} The trial court found the probative value of any possible relevant evidence that could have been elicited was outweighed by the prejudicial effect of addressing a collateral issue to whether appellant had assaulted Officer Ford. However, the trial court allowed appellant to question Officer Eldridge further about the process of investigating inmate complaints and internal investigations to clarify his testimony.

{¶ 26} Appellant first argues that the trial court erred as a matter of law by prohibiting appellant from questioning Officer Eldridge about his prior disciplinary hearing and reprimand to impeach Officer Eldridge's entire testimony as permitted by Evid.R. 607. Appellant asserts he had a reasonable basis for his inquiry about whether Officer Eldridge had been previously disciplined for use of force.

{¶ 27} Evid.R. 611(B) permits cross-examination on all relevant matters and matters affecting credibility. The language of the rule implies that questions relating to credibility are presumed to be inherently relevant, *Chambers v. Lee*, 9th Dist. Summit No. 27239, 2014-Ohio-4651, ¶ 7, and cannot be excluded as a collateral matter. *State v. Newland*, 2d Dist. Clark No. 1355, 1981 WL 5085, *2 (Feb. 18, 1981), citing *Harper v. State*, 106 Ohio St. 481, 485, 140 N.E. 364 (1922). However, the right of a party to cross-examine a witness regarding credibility is limited by the requirement that the party have a reasonable basis for believing there is an impeaching fact. Evid.R. 607(B). The

11.

purpose of the limitation is to prohibit undue influence of the jury through innuendo when questioning a witness about matters without a good-faith belief there is factual predicate to support the questioning. *State v. Gillard*, 40 Ohio St.3d 226, 230, 533 N.E.2d 272 (1988), *abrogated on other grounds* by *State v. McGuire*, 80 Ohio St.3d 390, 402, 686 N.E.2d 1112 (1997). Furthermore, the trial court has the discretion to impose reasonable limits on "cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, repetitive testimony, or marginally relevant interrogation." *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001), citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

{¶ 28} We find the trial court did not unfairly limit cross-examination in this case because no good-faith basis for impeachment existed to support further questioning of the witness. Appellant did not proffer any extrinsic evidence which demonstrated Officer Eldridge's initial testimony was clearly untruthful. The disciplinary records did not indicate that either investigation was initiated by an inmate complaint or that Officer Eldridge should have known the inmate complaint process. Furthermore, the records show the officer was not disciplined regarding an unjust use of force investigation.

{¶ 29} Secondly, appellant asserts the trial court erred as a matter of law by refusing to allow appellant to impeach the officer's testimony with extrinsic evidence (his disciplinary records) by showing the officer had a motivation to be untruthful. Evid.R. 608(B) and 616(A) and (C). Appellant also asserts that he should have been able to use

12.

this specific instance of the officer's conduct to attack his character of truthfulness without consideration of whether the extrinsic evidence would have an unfair prejudicial effect.

{¶ 30} While Evid.R. 607 permits a party to cross-examine a witness for impeachment purposes, a party may not use extrinsic evidence of specific instances of conduct to attack the credibility of a witness. Evid.R. 608(B). However, a party may impeach a witness through cross-examination or by the introduction of extrinsic evidence if such evidence would establish the witness had a: "[b]ias, prejudice, interest, or any motive to misrepresent." Evid.R. 608(B); Evid.R. 616(A) and (C).

{¶ 31} A trial court exercises its discretion to determine whether to allow cross-examination or the admission of extrinsic evidence relating to specific contradictions to a witness's testimony. Evid.R. 608(B); *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 100. The trial court must consider whether the evidence is clearly probative of the witness's character for truthfulness or untruthfulness. Evid.R. 608(B); *Drummond*.

{¶ 32} Appellant asserts the officer's disciplinary records evidence his misuse of force, which is relevant to impeach his testimony that he did not know the disciplinary process resulting from an inmate complaint. He asserts that the officer had a motive to misrepresent his knowledge of the process because it would: 1) reveal the current charges were filed two months after appellant filed two complaints against the officer (although there is no evidence in the record that appellant filed any complaints); and

13.

2) reveal the officer had been previously been disciplined as a result of an inmate complaint.

{¶ 33} We find appellant's arguments of relevancy not well-taken. First, the records do not support a finding the officer was disciplined for an unjust use of force. Second, the records do not support a finding the officer was untruthful about his knowledge of the disciplinary procedure for inmate complaints as there was no evidence the issues in his disciplinary record arose out of inmate complaints or that he should have known the process. Third, impeachment of Officer Eldridge's testimony regarding an alleged prior discipline for the use of unjust force was a collateral matter and would not have altered the outcome in this case. Officer Ford testified she was struck by appellant when he resisted complying with her order to lock down. The camera footage supports her testimony in part. Even if Officer Eldridge was untruthful about his knowledge of the inmate complaint process or his alleged prior discipline, we cannot reasonably infer from those facts that he instigated this incident which resulted in appellant striking Officer Ford. Fourth, Lieutenant Weirich testified the Ohio State Highway Patrol is responsible for investigating crimes which occur in the institution and instituting any criminal actions. Therefore, there was no evidentiary support for appellant's retribution argument. We conclude that admission of Officer Eldridge's disciplinary record or further questioning regarding this collateral matter would not have elicited any relevant evidence.

14.

{¶ 34} While appellant contends that he was entitled to use the disciplinary records for impeachment under Evid.R. 616 without consideration of whether the evidence was unfairly prejudicial, he cites no case law in support of his argument. App.R. 16(A)(7) requires that arguments be supported by citations to authorities on which the appellant relies.

{¶ 35} The purpose of Evid.R. 616 is to allow a party the opportunity to impeach a witness with a collateral matter, bias, through cross-examination or through extrinsic evidence. Giannelli, 1 Baldwin's Ohio Prac.Evid., Art. VI, Rule 616 Methods of impeachment, Author Comment, 616.5 Bias: Extrinsic Evidence (3d Ed.).

{¶ 36} The trial court exercises discretion in ruling on the admission of evidence and the appellate court reviews those decision under an abuse of discretion standard of review. *France v. Krebs*, 9th Dist. Lorain No. 14CA010585, 2015-Ohio-3723, ¶ 12. Admissible evidence must be relevant, Evid.R. 401, and even relevant evidence can be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). *See also Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 171-172, 743 N.E.2d 890 (2001); *State v. Scurlock*, 6th Dist. Lucas No. L-15-1200, 2017-Ohio-1219, ¶ 29; *House v. Swann*, 6th Dist. Lucas No. L-09-1232, 2010-Ohio-4704, ¶ 16.

{¶ 37} In the case before us, we find the trial court did not abuse its discretion by excluding the use of the extrinsic evidence to show the officer was biased. First, appellant failed to show the evidence was relevant because it does not establish the

15.

officer was disciplined for the use of excessive force. Furthermore, the issue is whether appellant assaulted Officer Ford, not the reason for appellant attempting to strike Officer Eldridge or how the incident arose. Second, any possible probative value is outweighed by the danger of unfair prejudice because appellant's attempt to imply that Officer Eldridge instigated the incident misleads the jury from evaluating the evidence actually admitted.

{¶ 38} Therefore, we find appellant's second assignment of error not well-taken.

### Costs of Appointed Counsel and Confinement

{¶ 39} In his third assignment of error, appellant argues the trial court abused its discretion in ordering appellant to pay the costs of appointed counsel, confinement and supervision because there was not clear and convincing evidence he had the ability to pay such costs.

{¶ 40} The review of the trial court's felony sentence imposing costs, sanctions, and fines is limited by R.C. 2953.08(G)(2) to whether the court's imposition of the sentence is contrary to law. *State v. Tucker*, 6th Dist. Wood No. WD-16-063, 2018-Ohio-1869, ¶ 36.

{¶ 41} The costs of supervision for imposing a community control sanction may be imposed pursuant to R.C. 2929.18(A)(5)(a)(i). Appellant was sentenced to a prison term of 30 months, however, so no costs of supervision will be imposed in this case.

{¶ 42} The trial court may impose the costs of confinement imposed under R.C. 2929.18(A)(5)(a)(ii) and the cost of appointed counsel allowed by R.C. 2941.51(D) after

16.

it considers the offender's present and future ability to pay the fine. R.C. 2941.51(D) and 2929.19(B)(5). The court is not required to conduct a separate hearing, but the record must contain some evidence the court considered the offender's present and future ability to pay such a sanction. *State v. Williams*, 6th Dist. Lucas No. L-17-1186, 2019-Ohio-2657, ¶ 59.

{¶ 43} Appellant argues there was insufficient evidence when there was no education or employment history and appellant was sentenced to a lengthy prison term.

{¶ 44} In the case before us the trial court found appellant has the ability to pay these costs at the sentencing hearing and incorporated that finding into its sentencing entry. The presentence investigation report indicates appellant is 31 years old. Appellant was already serving a prison term of 28 years and had only served five years of his prior term when the present offense occurred extending his sentence by 30 additional months. Therefore, appellant should be released prior to age 60.

{¶ 45} The presentence investigation report disclosed that appellant is not on any medication and has not had any history of psychiatric or psychological counseling. He graduated from high school. There was no indication of anything which would prevent appellant from being able to find suitable employment after his release from prison or that he was unable to work.

{¶ 46} Evidence of his education and prior employment was omitted because appellant refused to cooperate during the presentence investigation interview. Therefore, appellant cannot now assert a claim of insufficient evidence that was the result of his own

17.

actions. *State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414, ¶ 108 (citations omitted). Even plain error will not be recognized if the defendant invited the alleged error. *State v. Rohrbaugh*, 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 10.

{¶ 47} Therefore, we find the record supported an award of the costs of confinement and appointed attorney fees and the trial court's assessment of costs was not contrary to law. Appellant's third assignment of error is not well-taken.

{¶ 48} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____
 JUDGE
Arlene Singer, J. _____

Thomas J. Osowik, J. _____
CONCUR. JUDGE

_____
 JUDGE

---

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.